UNITED STATES of America,
Plaintiff–Appellee,

v.

John A. KRANKEL, Defendant–Appellant.

No. 97–2941.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1998.

Decided Dec. 31, 1998.

Randy G. Massey (argued), W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Peter M. Cohen (argued), St. Louis, MO, for Defendant–Appellant.

Before COFFEY, KANNE and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

On March 14, 1997, a jury found the defendant-appellant, John Andrew Krankel ("Krankel"), guilty of conspiring to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Krankel received a sentence of 360 months of imprisonment, five years of supervised release, a fine of $2,000, and a special assessment of $50. Krankel appealed his conviction and sentence, arguing that the court erred: (1) in denying his pre-trial motion to suppress the statements he gave to law enforcement officers; (2) in admitting into evidence a videotaped conversation he had with an undercover police officer; (3) in refusing to admit the testimony offered by a defense witness; and (4) in imposing sentence. We affirm.

## BACKGROUND

Beginning in late 1993, Jim Hamblin ("Hamblin") and Krankel operated a methamphetamine manufacturing and distributing organization in the state of Illinois. In early November of 1994, the Illinois State Police received information that Krankel wished to hire a "hit man" to murder Hamblin and proceeded to conduct an investigation. Illinois Police Sergeant Craig Koehler ("Koehler") posed as a hit man and scheduled a meeting with Krankel on November 16, 1994, at the Drury Inn in Mount Vernon, Illinois. The police videotaped the meeting and during the ensuing conversation Krankel admitted that he wanted Hamblin and his family murdered because he was of the opinion that Hamblin was attempting to drive him "out of the business" by refusing to provide him with the necessary chemicals and equipment to produce methamphetamine pursuant to their agreement. After Sergeant Koehler agreed to commit the murders for $700, Krankel gave him directions to Hamblin's house. After the meeting had concluded, the officers arrested Krankel for solicitation to commit murder and advised him of his *Miranda* rights. As part of their continuing investigation, subsequent to Krankel's arrest, the officers were interested in searching a house owned by Krankel and his stepdaughter, Shelly Krouse, in Conway, Arkansas. Krouse consented to the search and the officers recovered a handgun as well as chemicals and equipment used in the production of methamphetamine. Officers also searched Hamblin's residence (with Hamblin's permission) and seized other equipment and chemicals also used in the production of methamphetamine.

Krankel was charged with solicitation to commit murder in state court. On November 17, 1994, Matt Vaughn ("Vaughn") was appointed to represent the defendant. After his arraignment, Krankel contacted Illinois Police Detective Brian Harms ("Harms") on several occasions and expressed an interest in meeting and conversing with the police while offering to give information about drug activity in Illinois in exchange for leniency on his solicitation charge. On November 18, 1994, Harms and an Assistant State Attorney met with Krankel at the Jefferson County, Illinois, courthouse to discuss drug activity in Illinois. Krankel's attorney, Vaughn, was not present during the meeting. Prior to the meeting, Harms testified that he contacted Vaughn and received permission to interview Krankel outside the presence of his attorney, as long as the state solicitation charge was not discussed. Conversely, Krankel asserts that state officials did not contact Vaughn and thus did not have permission to conduct the interview. At the start of the meeting, Harms informed Krankel that Vaughn was aware of the meeting and advised the defendant of his *Miranda* rights. Krankel repeated much of what he had stated during the meeting on November 16 and advised the officers that he and Hamblin were partners in a methamphetamine trafficking organization and that Krankel had agreed to move to Arkansas

from Illinois to produce and sell methamphetamine. As part of this agreement to operate the drug conspiracy, Hamblin was to supply Krankel with the equipment and materials needed to produce methamphetamine. Accordingly, Krankel contended that because Hamblin failed to follow through with his part of the agreement (supplying necessary equipment and materials), he was in effect driving him out of the drug business.

Harms testified that after the first meeting between him and Krankel, Harms received as many as twenty additional calls from Krankel in an attempt to arrange further meetings. Harms referred Krankel to Inspector Greg Hanisch ("Hanisch") of the Southern Illinois Drug Task Force. A meeting between Krankel, Hanisch and Special Agent Herman Hogue ("Hogue") of the Drug Enforcement Agency ("DEA") occurred on December 20, 1994. Because, in the opinion of the law enforcement officers, Krankel had previously waived his right to be advised of his *Miranda* rights through his repeated and successful attempts to initiate contact with the police, the officers were not required to advise Krankel of his *Miranda* rights prior to the December 20 meeting. Furthermore, the officers stated that they had received permission from Krankel's attorney, Vaughn, to interview Krankel within certain limitations as to the subject matter that could be discussed. Specifically, according to Hogue, Vaughn requested only that the state conspiracy charge not be discussed. During the meeting of December 20, Krankel stated that Hamblin was in charge of the drug operation. He discussed how he and Hamblin divided the drug profits and again detailed his arrangement with Hamblin for his participation in the drug business, including the production and distribution of methamphetamine in Arkansas.

On October 9, 1996, Krankel and Hamblin were indicted in the Southern District of Illinois on federal charges of conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] Prior to trial, Krankel filed a motion to suppress the statement given to law enforcement officials during the meeting

of December 20, 1994, contending that the statement was inadmissible as the police had failed to properly give him his *Miranda* warnings. After a hearing on the motion, the trial judge denied Krankel's suppression motion on the ground that the defendant had initiated the contact and requested the meeting. The court also found that the police had received permission from the defendant's attorney, Vaughn, to meet with Krankel alone and discuss the facts and circumstances surrounding the federal drug charge only. Krankel also filed a motion *in limine* concerning allegedly prejudicial portions of the videotape of the November 16, 1994, meeting with Koehler, but on the day of trial, Vaughn withdrew this motion. At trial, the defense also attempted to demonstrate that Krankel was not really serious about having Hamblin killed and sought to introduce evidence in hopes of establishing that the directions that Krankel had provided the hit man were purposefully inaccurate. The Government objected to the inclusion of such evidence and the trial court sustained the objection, finding the nature of this evidence to be meritless and irrelevant to the drug conspiracy charge.

On March 14, 1997, a jury found Krankel guilty of conspiring to manufacture and distribute methamphetamine. At Krankel's sentencing hearing, Terry Dal Cason ("Cason"), a DEA forensic chemist, testified that the amount of chemicals found at Krankel's residence would produce approximately 1,026 grams of methamphetamine. The court found that this quantity of drugs merited a base offense level of 36 under the United States Sentencing Guidelines. A two-level increase for possession of a firearm and a two-level increase for obstruction of justice raised Krankel's offense level to 40. Based on the pre-sentence report ("PSR"), Krankel received a sentence of 360 months of imprisonment, five years of supervised release, a fine of $2,000, and a special assessment of $50.

---

1. The defendant had not, at this time, been indicted on the state charge of solicitation of murder.

### ISSUES

On appeal, the defendant contends that the trial court erred: (1) in denying the defendant's motion to suppress the statements made to law enforcement officials during the meetings on November 18, 1994, and December 20, 1994; (2) in allowing the entire videotaped conversation that Krankel had with undercover police officer Koehler on November 16, 1994, into evidence; (3) in refusing to allow the defense the opportunity to present evidence demonstrating that the directions to Hamblin's house provided by Krankel to Koehler during the November meeting were not accurate; and (4) in determining that Krankel be sentenced to 360 months imprisonment.

### DISCUSSION

*A. The District Court's Denial of the Defendant's Motion to Suppress*

■ The defendant initially challenges the district court's denial of his motion to suppress, in which he sought to suppress his statement of December 20, 1994. The trial court's denial of a motion to suppress evidence is reviewed for clear error. *See United States v. Tilmon*, 19 F.3d 1221, 1223 (7th Cir.1994) (citations omitted).

■ The defendant contends in his brief that the December 20 statement must be suppressed because he had not been properly advised of his constitutional rights prior to the meeting, according to the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, the Supreme Court recognized that under the Fifth and Fourteenth Amendments of the United States Constitution, after a defendant invokes his privilege, he has the right to remain silent and the right to the presence of an attorney during a custodial interrogation. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444, 86 S.Ct. at 1612. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* This Court, following the Supreme Court's lead, has long recognized that an exception to the *Miranda* rule exists in circumstances where the defendant initiates communication with law enforcement after he invokes his right to counsel. *See Robinson v. Percy*, 738 F.2d 214, 221–22 (7th Cir.1984) (citing *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). Although in *Edwards* the Supreme Court held that a defendant who asked for counsel did *not* waive his right to counsel when interviewed the following day upon the invitation of the police, the Court added that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *Id.*, 451 U.S. at 484–85, 101 S.Ct. at 1885 (emphasis added). "Had [the defendant] initiated the meeting ..., nothing in the Fifth and Fourteenth Amendments would prohibit *the police from merely listening to his voluntary, volunteered statements and using them against him at trial.*" *Id.*, 451 U.S. at 485, 101 S.Ct. at 1885 (emphasis added); *see also Davis v. United States*, 512 U.S. 452, 458, 114 S.Ct. 2350, 2354–55, 129 L.Ed.2d 362 (1994).

In the case under consideration, the trial judge rejected the defendant's motion to suppress, ruling that the *Miranda* warnings were unnecessary prior to the December 20 statement because the defendant, by "initiat[ing] further communication, exchanges, or conversations with the police," *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885, had waived his *Miranda* rights. Krankel requested the meeting and voluntarily gave the statement to the officers on December 20 in the hopes of providing information concerning the local drug trade in order that he might receive leniency in his state charge of solicitation for murder. After reading the record, we are convinced that the defendant freely and voluntarily wanted to and did in fact give the police the statement; he contacted the police on a number of occasions in order that he might receive a less severe punishment. Because the defendant initiated contact by repeatedly telephoning Harms to request a

meeting before the conference and statement of December 20, the *Edwards* exception to the general *Miranda* rule governs and makes his statement admissible.

■ The same holds true with respect to the defendant's statement during the meeting on November 18. The defendant contends that the trial court erred in not suppressing the statement given to Harms during the meeting at the Jefferson County courthouse. According to Harms's testimony, prior to the November 18 meeting, Krankel telephoned him "on various occasions wanting to provide ... information that we could possibly use in exchange for maybe some leniency in his sentencing in that case." Furthermore, police officers readministered *Miranda* warnings at the start of the meeting on November 18. In our opinion, it is rather specious for Krankel to now argue that his statement from the November 18 meeting should have been suppressed.

■ The defendant also contends that the November 18 statement should be suppressed because "there was a question as to whether [he] had the mental capability to make a knowing and intelligent waiver of his rights" due to his long history of drug abuse. The defendant presented testimony at his suppression hearing from Dr. Terry Martinez ("Martinez").[2] After examining Krankel's medical records, Martinez testified that Krankel suffered from "Fried Brain Syndrome," which is "a type of encephalopathy" that renders the victim unable to "function normally or think normally." However, it is interesting to note that the record discloses that the defendant failed to file any document or motion to apprise the court that he was not competent to waive his rights. Moreover, Martinez is not a doctor of medicine, but has only a doctoral degree in the field of pharmacy. Thus, Martinez is not a licensed physician and at no time did he present evidence that he ever personally examined the defendant.

■ Furthermore, the defendant never filed a motion before the trial court seeking

suppression of the November 18 statement. The only motion to suppress the defendant filed was his motion to suppress the statement of December 20, 1994. This fact is reiterated by Krankel's attorney, Vaughn, prior to the beginning of the hearing on the motion to suppress:

> Your honor, I have one matter in my Motion to Suppress, I indicate in Paragraph Three that the conversation and interrogation in question occurred on November 20, that's not correct. [The Assistant United States Attorney] correctly points out in his reply that *the actual conversation took place on December the 20th* and I wanted the Court to be aware that's my mistake and the fact that Government has got the time frame correct in his response and my time frame and *I'd like leave to amend my Motion to reflect the date of December 20th as being the conversation in question.*

(emphasis added). Rule 12(b) of the Federal Rules of Criminal Procedure requires that motions to suppress evidence be raised prior to trial. Subsection (f) of that Rule provides that failure to do so constitutes waiver. A defendant who fails to file a motion to suppress evidence in the trial court prior to trial waives his right to appellate review of the issue. *See United States v. Smith*, 80 F.3d 215, 218 (7th Cir.1996) (citing Fed.R.Crim.P. 12(f); *United States v. Moralez*, 964 F.2d 677, 680 (7th Cir.1992), *cert. denied*, 506 U.S. 903, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992)).

■ Finally, the defendant also contends that the statements he gave at both meetings with law enforcement officers should have been suppressed because, contrary to the officers' testimony, his attorney never gave them permission to speak with Krankel without counsel present. The defendant argues that under the Supreme Court's holding in *Michigan v. Jackson*, 475 U.S. 625, 635, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986), the Sixth Amendment requires that a defendant's statements made to law enforcement officials after counsel has been assigned be suppressed if counsel is not present. We

---

**2.** Martinez was offered by the defense as an expert in the fields of pharmacology and toxicology. Pharmacology is defined as the study of the origin, nature, chemistry, effects, and uses of

drugs. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1272 (28th ed.1994). A related field of study, toxicology, is the study of poisons. *See id.* at 1724.

disagree, for we are of the opinion that the defendant has misread the Supreme Court's holding in *Jackson*, which provides in clear and unequivocal language that "if *police initiate* interrogation after a defendant's assertion ... of his right to counsel, any waiver of the defendant's right to counsel for that *police-initiated* interrogation is invalid." *Id.* at 636, 106 S.Ct. at 1411 (emphasis added). We hold that *Jackson* does not apply to this case because, as discussed earlier, there is no doubt that Krankel initiated the discussions between himself and law enforcement officers and furthermore, the trial judge made an explicit finding that the defendant's attorney had also given the officers permission to talk with the defendant. The trial judge stated: "[b]ased on the evidence that I've heard I find that the lawyer was contacted, he gave his permission to the law enforcement officer to talk to Mr. Krankle [sic]." Thus, the Sixth Amendment is not implicated in this case.

In summary, the district court did not err in denying the defendant's motion to suppress his statement from his meeting with law enforcement on December 20 because the defendant initiated contact with the police. Also, because the defendant failed to raise this issue before the trial court, he waived his right to argue that the November 18 statement should also be suppressed. Finally, the defendant's Sixth Amendment rights are not implicated because the defendant's counsel specifically permitted law enforcement officers to speak with the defendant in his absence.

*B. The Admission of the Videotape*

■ Krankel next claims that the trial court committed error in receiving in evidence the videotape of the meeting between the defendant and the undercover police officer, Koehler. Specifically, Krankel contends that the court erred because the tape contained evidence related to the state crime of solicitation to commit murder and the probative value of the tape was outweighed by its alleged prejudicial effect on the jury. This Court reviews a trial court's rulings on the admissibility of evidence under an abuse of discretion standard. *See United States v. Kladouris*, 964 F.2d 658, 663 (7th Cir.1992) (citation omitted).

The videotape in question depicted a meeting between the defendant and Sergeant Koehler in a room at the Drury Inn in Mount Vernon, Illinois. During the meeting, the defendant identified Hamblin as the person he wanted killed and explained the nature of his drug enterprise agreement with Hamblin. Hamblin had asked Krankel to move to Arkansas to open a lab to manufacture and assist in the distribution of methamphetamine. Krankel now wanted to have Hamblin killed because he was forcing him (Krankel) out of the drug business by refusing to provide him with the necessary equipment and chemicals. Although the defense initially filed a motion *in limine* to suppress the videotape, contending that the content of this tape was prejudicial, the defense attorney asked the court to withdraw the motion on the day of the trial. Furthermore, the defense failed to raise an objection to the introduction of the videotape at trial.

■ This Court has repeatedly held that "the appellant's waiver of [an] argument through his failure to raise a timely objection ... makes it unnecessary for [the reviewing court] to decide [the issue]." *United States v. Pryor*, 957 F.2d 478, 481 (7th Cir.1992). Such an objection must "alert[ ] the court and opposing party to the specific grounds for the objection." *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988) (citations omitted). When a defendant fails to timely and properly object at trial to the admission of evidence, the issue is waived by the defendant absent a showing of plain error. *See United States v. Moore*, 936 F.2d 1508, 1520 (7th Cir.1991), *cert. denied*, 502 U.S. 991, 112 S.Ct. 607, 116 L.Ed.2d 630 (1991). Under the plain error standard, a defendant must "demonstrate that he ... probably would have been acquitted but for the erroneously admitted evidence." *Wynn*, 845 F.2d at 1443 (citation omitted). More particularly, under a plain error analysis, this Court is allowed "to correct only particularly egregious errors for the purpose of preventing a miscarriage of justice[,] ... which implies the conviction of one who but for the error would have been acquitted." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 224, 142 L.Ed.2d 184 (1998). In *Wynn*, 845 F.2d at 1440, the

defendant, a postal worker, was convicted of embezzling and opening mail not addressed to him. At trial, the defendant objected to the prosecution's use of witness testimony concerning the postal inspectors' observations during their surveillance of the defendant and the lack of proper foundation for one of the prosecution's witness's testimony. *See id.*, 845 F.2d at 1441. Both objections were overruled. On appeal, the defendant for the first time argued a different theory: that the Government's use of reports of prior investigations of the defendant was improper. *See id.* at 1442. This Court noted that the defendant's failure to state a timely and proper objection at trial concerning this new theory was a strategic decision. *See id.* at 1443. We held that "[w]here a defendant fails to object to the admission of evidence at trial because of a tactical decision, we are even more reluctant to find plain error." *Id.* (citations omitted). In such a circumstance, "we cannot conclude that had this evidence been excluded [the defendant] probably would have been acquitted." *Id.*

▮ In the case before us, the defendant filed a motion *in limine* prior to trial concerning the videotape and the court determined that the tape could be introduced *after certain redactions were made.* However, Krankel's attorney, Vaughn, changed his strategy on the morning of trial and thus withdrew his motion and furthermore failed to object during trial to the introduction of the evidence. Vaughn stated: "I drove down to Perry County, Illinois, and I talked to Mr. Krankle [sic] at the Perry County Jail. And after that discussion I was persuaded to do what he wishes me to do and to permit the tape to come in unedited and unredacted." Thus, *due to the tactical change in strategy on the part of the defense,* the entire, unredacted tape was admitted in evidence without objection. We fail to understand the defendant's reasoning, for under *Wynn,* such a tactical decision cannot thereafter form the basis of a plain error finding.

▮ The defendant now on appeal contends that the tape was prejudicial because it contained statements by the defendant regarding his desire to have his coconspirator murdered. The defendant argues that under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." However, because the defendant failed to raise the argument that the tape was more prejudicial than probative before the trial court, under our holding in *Moore,* where we noted that an objection must be timely made at trial, we will not consider it on appeal. The defendant also makes the argument that since the tape included conversations of criminal conduct beyond the drug conspiracy, the tape was offered to show the defendant's bad character. However, as discussed earlier, the defendant has waived this argument because he failed to object to the introduction of the tape at trial.

▮ In summary, the entire videotape depicting the meeting between Krankel and the undercover police officer was introduced and properly received at trial without objection from defense counsel. We disagree with the defendant's contention that the trial judge's decision to include the tape was improper; for upon review, we have not found that plain error occurred as a result of the trial judge's actions. Furthermore, as this Court recently observed in our decision in *Wilson v. Williams,* 161 F.3d 1078, 1095 (7th Cir.1998), "[a] party cannot ... blow 'hot and cold' during the course of litigation. When a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position." (citation and internal quotation omitted).

*C. The District Court's Exclusion of the Defendant's Proffered Evidence*

▮ The defendant next argues that the trial court erred in refusing to admit evidence that would serve to demonstrate that the directions which Krankel had given to the hit man Koehler to assist him in locating Hamblin's house were inaccurate. Krankel intended to present the testimony of a witness who attempted to follow the directions, but was unable to locate Hamblin's house. Thus, Krankel planned to demonstrate that he was not serious about having Hamblin killed and had given the false directions to the hit man Koehler on purpose. The trial judge refused to allow the testimony of the

witness who had attempted to follow Krankel's misdirections to Hamblin's house, ruling that such evidence was irrelevant.

This Court has repeatedly stressed that "[t]he trial court has broad discretion to determine the admissibility of evidence and will be reversed only upon a clear showing of abuse of discretion." *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir.1995) (citation and internal quotations omitted). The *Pulido* court continued: "Appellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle." *Id.* (citation and internal quotation omitted). Thus, in reviewing the trial court's ruling, we must be highly deferential.

■ A charge of conspiracy requires only that the Government establish "a participatory link between the conspiracy and the defendant. To establish that participatory link, the Government must offer sufficient evidence to demonstrate that the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose." *United States v. Magana*, 118 F.3d 1173, 1200 (7th Cir.1997) (citation and internal quotation omitted). Pursuant to our holding in *Pulido*, we defer to the discretion of the trial court and hold that the accuracy of Krankel's directions is collateral at best to the Government's proof, under *Magana*, that "the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose." *Id.* As this evidence does not tend to prove or disprove an element of the crime charged, the district court judge did not abuse his discretion in excluding it.

### D. The Defendant's Sentence

■ Finally, Krankel contends that the trial court erred in its imposition of his sentence. A district court's sentencing determinations under the United States Sentencing Guidelines are reviewed for clear error. *See United States v. Montgomery*, 14 F.3d 1189, 1196 (7th Cir.1994). This Court "will uphold a district court's sentencing decision under the Sentencing Guidelines so long as the district court correctly applied the Guidelines to findings of fact that were not clearly erroneous." *Id.* (citation and internal quotation omitted).

■ At the defendant's sentencing hearing, the trial court relied upon the defendant's PSR, which reflected that the defendant had a lengthy criminal career. The sentencing court also relied upon the Government's estimate of how much methamphetamine the defendant could have produced in his Arkansas lab from the chemicals found by law enforcement during their search of Krankel's residence. The trial court assigned the defendant an offense level of 40 and a criminal history category of VI. The defendant argues on appeal that, in relying on the PSR and the Government's estimate concerning Krankel's ability to produce methamphetamine, the district court failed to make specific findings of fact as required under *United States v. Edwards*, 945 F.2d 1387 (7th Cir.1991). In *Edwards*, we held that every district judge should make an individualized determination as to the amount of drugs which are foreseeable to each defendant. *See id.* at 1399. "Specific findings will both guide reviewing courts to the evidentiary basis for sentencing judgments, and also help the trial judge to identify matters relevant to application of the Guidelines." *Id.* (quoting *United States v. Herrera*, 878 F.2d 997, 1002 (7th Cir.1989)).

During the sentencing hearing, the defendant objected to the district court's use of the PSR in determining that Krankel was a career offender and could produce more than 1,000 grams of methamphetamine from the chemicals found by law enforcement officials during the search of his residence. Although the trial court agreed to hear arguments on these objections, the defendant failed, for reasons unexplained in the record, to present any evidence to prove his contentions and instead provided only bald, unsupported assertions. On the other hand, the Government presented copies of Krankel's prior criminal history to substantiate the PSR's determination of Krankel's criminal history category. Furthermore, the Government presented the testimony of Cason, the DEA forensic chemist, to substantiate the Government's computation of the amount of methamphetamine that could be produced from

the quantity of chemicals found at Krankel's residence. The district court overruled the defendant's objections and imposed sentence, specifically stating that:

> Based on the evidence that the Court heard at trial, the transcript is available, based on the exhibits, the Court overrules the objections stated in the defendant's written objections and finds that the basic offense level, the total Offense Level as adjusted is 40, with a Criminal History Category of VI and a guideline range of 360 months to life, a supervised release of five years, a fine range of $25,000 to $4,000,000.

■ This Court has long held that a district court is permitted to adopt the factual findings and calculations contained in the PSR, provided that those findings are based on sufficiently reliable information. *See United States v. Wade*, 114 F.3d 103, 106 (7th Cir.1997), *cert. denied,* ── U.S. ──, 118 S.Ct. 238, 139 L.Ed.2d 169 (1997). In *Wade*, the defendant, convicted of distributing cocaine, objected to his sentence, contending that the trial court failed to make specific findings of fact concerning the type and amount of cocaine he distributed. *See id.* at 104. However, during the defendant's sentencing hearing, two witnesses testified about the type of cocaine they had purchased from the defendant and two other witnesses testified as to the quantity of cocaine sold. *See id.* We affirmed the sentence, holding that the trial judge "had before him the presentence investigation report and objections, exhibits, sentencing testimony, and the argument of counsel. His brief statement indicated ... that he was adopting the factual findings of the presentence report...." *Id.* at 106. In the case under consideration, the facts in Krankel's PSR were sufficiently reliable because, as in *Wade*, they were consistent with the evidence presented; that is,

they were consistent with Cason's testimony and Krankel's prior criminal history. Furthermore, the defendant failed to adduce any evidence to support his objections. "Generally, where a court relies on a PSR in sentencing, it is the defendant's task to show the trial judge that the facts considered in the PSR are inaccurate. A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth." *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir.1995) (quoting *United States v. Mustread*, 42 F.3d 1097, 1101 (7th Cir.1994)) (emphasis omitted).[3] "Bald assertions cannot replace the specific and detailed averments of fact...." *Lucas v. Turner*, 725 F.2d 1095, 1105 (7th Cir.1984). Because the defendant has failed to point us to any information in the PSR or testimony from the Government's witness that can be considered inaccurate, we have no reason to conclude that the PSR or the Government witness were anything but reliable.

## CONCLUSION

Because the defendant initiated contact with law enforcement prior to both the November 18 and December 20 meetings, and his attorney advised the officers that he permitted Krankel to meet with law enforcement officers alone, the trial court's denial of the defendant's motion to suppress the statements made by him to law enforcement officers was not clearly erroneous. In addition, the district court did not commit plain error in admitting the unredacted videotape of the defendant's conversation with Koehler since the defense withdrew its motion *in limine* concerning the tape prior to trial. Also, the district court's refusal to admit evidence concerning the accuracy of the directions Krankel gave to Koehler was not an abuse of discretion because this evidence was irrele-

---

3. Furthermore, it is not clear to this Court that the defendant specifically objected to the trial court's lack of findings, as opposed to reiterating his objection to the court's rejection of his substantive objections to the sentence. "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection. Thus, not just any objection will save an issue for review.... Rather, this Court will consider an argument only if the party asserting it made a proper, timely and specific

objection on the same ground at trial...." *Linwood*, 142 F.3d at 422 (citations and internal quotations omitted). In the case under consideration, the defendant never requested that the district court make more specific findings and did not object at the time of sentencing that the findings were not sufficiently specific. Therefore, if the defendant failed to object to the trial court's action, he has waived this issue for the purpose of appeal. *See United States v. Salinas*, 62 F.3d 855, 859 (7th Cir.1995).

vant to the elements of the crime charged. Finally, the district court's sentencing of the defendant under the United States Sentencing Guidelines was not clearly erroneous because the court relied on Krankel's PSR and the evidence adduced during the sentencing hearing.

AFFIRMED.