In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1195

United States of America,

Plaintiff-Appellee,

v.

Brian W. Cooper,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 CR 62--John C. Shabaz, Chief Judge.

Argued December 7, 2000--Decided March 21, 2001

Before Bauer, Manion, and Rovner, Circuit Judges.

Bauer, Circuit Judge.  Brian W. Cooper appeals
his conviction for knowingly and intentionally
possessing a cocaine base with intent to
distribute. He asks for a new trial, arguing that
the district court committed plain error by
allowing the government both to introduce
testimony regarding the substance of an anonymous
tip implicating Cooper and to make repeated
reference to the substance of the tip throughout
his trial. Because we find that Cooper has waived
any error regarding the admissibility of the
substance of the tip, we affirm.

BACKGROUND

On April 16, 1999, Officer Mark Jaeger of the
Wausau, Wisconsin police department received a
telephone call from Detective Beecher of the Vice
Unit of the Milwaukee police department. Beecher
informed Jaeger that he had just received an
anonymous tip that there was a black man named
Brian Cooper who was traveling to the Wausau area
by Greyhound bus carrying several ounces of
cocaine. According to Beecher, the tipster had
provided several details, specifically that
Cooper was due to arrive in Wausau on a Greyhound
bus at 7:15 p.m., and that he would be wearing
either a gray "FUBU style" jacket or black
leather jacket with some type of writing on it
and carrying a duffel bag.

Relying on this information, officers Jaeger and Peters drove to the Greyhound bus station and waited for Cooper's arrival. At approximately 7:15, they observed a black male wearing a black leather jacket with writing on it exit the bus, retrieve a blue duffel bag, and enter the passenger side door of a waiting Chevy Impala. They also saw the man place his duffel bag in the Impala before sitting in the passenger front seat. After the car drove off, Jaeger and several other officers followed it for approximately five to seven minutes until one of the officers eventually stopped it for a traffic violation. As the officer was writing up the traffic citation in his squad car, he watched Cooper and Jemeir Brown (the driver of the Impala) moving around inside the vehicle, and he noticed Cooper bend over at the waist towards the floor of the vehicle. The officers then ordered both men to get out of the car, and Jaeger retrieved his search dog to search for drugs in the car.

While sniffing the outside of the car, the dog "alerted" to the presence of drugs in the area around the passenger side door. Jaeger then allowed the dog inside the car, whereupon it alerted twice more, this time on the passenger side front seat and behind the driver's seat in the vicinity of Cooper's duffel bag. Jaeger then searched the areas of the car where the dog had alerted. Under the front passenger seat (where Cooper had been sitting), Jaeger found a pack of cigarettes with some plastic hanging out of the flap. When he opened the cigarette pack, Jaeger found that it contained a brownish, chunky substance which he believed to be some kind of cocaine. An on-site Cobalt thicyanate test confirmed that the substance contained cocaine. The officers found no other drugs either in Cooper's duffel bag or elsewhere in the car. Subsequent fingerprint tests on the cigarette pack and on the bag containing the drugs yielded no identifiable prints. Cooper was arrested and charged with knowingly and intentionally possessing, with intent to distribute, cocaine base, schedule II controlled substance, in violation of 21 U.S.C. sec. 841(a)(1). Jemeir Brown was also arrested at the scene, but no drug-related charges were filed against him.

Before trial, Cooper's counsel filed a motion in limine to exclude any reference to the anonymous tip. The motion sought to bar the government from making "any direct or indirect mention whatsoever at trial before the jury of . . . [the facts] [t]hat there was an anonymous tip concerning the Defendant traveling to the Wausau area with cocaine . . . [t]hat Detective Beecher of Milwaukee had informed Officer Jaeger that the

defendant would be arriving in Wausau with cocaine, based on the anonymous tip." The motion argued that the tip was "unverified and unsubstantiated," that if admitted it would tend to show guilt without allowing Cooper to confront the tipster, that its probative value is "significantly outweighed by the prejudicial effect that it might have on . . . the members of the jury," and that "any objections to such evidence at trial, even if sustained and/or curative instructions given, would not remove the prejudicial effects thereof." During a pre-trial hearing on the motion before the Magistrate, the government asserted that it believed that case law clearly supported the admissibility of the fact that the tip was received by the police. The magistrate then stated, "I suppose the question would be how much detail you are allowed to put in [regarding the tip]." Cooper's counsel then replied, "Since I filed this motion in limine I have had additional discovery. Quite frankly at this point if it comes in, I don't have any objection." The Magistrate then offered, "If you want the government to brief it, that's fine." Cooper's counsel responded "No. At this particular point, first of all, I truthfully believe that probably it would come in to explain the officer's actions as far as the tip. Given, as I said, the newly discovered evidence, I think I will withdraw the entire motion. How's that sound?" The Magistrate again reminded Cooper's counsel that "[i]t's your choice. You are certainly entitled to be heard on it." However, Cooper's counsel reiterated "[n]o. I just as soon withdraw it [sic]." During a conference held on the first day of trial, the government confirmed with the district court and Cooper's counsel that it would be asking Jaeger to testify "as to tip information that he received," and it explicitly stated that this information "would normally be perceived as hearsay." After the government reasserted its belief that case law supported the admissibility of the tip and reiterated that it was "advising the Court up front" that it would be eliciting Jaeger's testimony regarding the tip, the court asked Cooper's counsel if he had any response. Cooper's counsel said "Nothing in that regard, Your Honor."

At trial, both the government and Cooper's counsel referred extensively to the substance of the anonymous tip. In its opening statement, the government stated that it anticipated that the evidence would show that "[o]n April 16, 1999, law enforcement officers up in Wausau, Wisconsin received a tip by telephone and in that tip they learned that an individual would be arriving in Wausau that evening on the bus and a description matching Mr. Cooper and that individual would be carrying a quantity of drugs." Later, through its

direct examinations of officers Jaeger and Peters, the government brought out more of the details of the tip, including the tipster's prediction that "a black male by the name of Brian Cooper" was coming to Wausau carrying several ounces of cocaine, that Cooper would be wearing either a gray FUBU style jacket or a black leather jacket with writing on it, that he would be carrying a duffel bag, and that he boarded a Greyhound bus which left Milwaukee at 2:30 and which would arrive in Wausau at 7:15. In its closing statement, the government summarized Jaeger's testimony and described the tip as "very accurate." At no point did Cooper's counsel object to any of the government's references to either the existence or the substance of the tip, nor did he request the court to provide any kind of a limiting instruction regarding the tip.

Cooper's counsel also made significant use of the substance of the tip during the trial. In his opening statement, Cooper's counsel stated: "But we have this anonymous tip. This is the link, if you will, and it's a call to the Milwaukee authorities advising, so I understand, that he [Cooper]'d be traveling by bus, arriving about 7:15, carrying several ounces of cocaine . . . That he was going to be wearing a gray FUBU jacket . . . or a black leather jacket . . . [a]nd that he would be carrying a black duffel bag." Similarly, in his cross-examination of Jaeger, Cooper's counsel asked "But basically the tip was that Brian Cooper would be arriving from the Milwaukee area and were you informed that it would be around 7:15? . . . And that he would be carrying a black duffel bag, correct?" Trial Trans. at 59-60. Finally, in his closing argument, Cooper's counsel again referred to the substantive details of the tip, this time using those details to suggest that Jetaun Brown, the wife of the car's driver, Jemeir Brown, was the only person who could have been the tipster: "Really there's only one person, one person who knew that in fact he was going to Wausau . . . that's Jetaun Brown . . . Again, what was the tip? The trip [sic] was that Brian Cooper would be arriving, that he in fact would be carrying a duffel bag . . . and that he would be there approximately 7:00, 7:15 . . . So who made the tip? . . . I think the evidence is that Jetaun Brown made the tip."

The jury convicted Cooper as charged. He asks us to vacate his conviction and to remand for a new trial, arguing that even though he forfeited objections to the admission of the substance of the tip by failing to object at trial, the district court plainly erred by allowing repeated reference to, and testimony regarding, the substance of the anonymous tip implicating

Cooper. Cooper contends that the government's references to the substance of the tip-- which included a specific charge of criminality against Cooper--violated his rights to confront the witnesses against him and prejudiced the outcome of his trial, and that whatever probative value such statements had was substantially outweighed by their prejudicial effect. The government argues that we lack jurisdiction to review any such "error," because by withdrawing his motion in limine and using the substance of the tip in his theory of the case, Cooper waived (rather than forfeited) the issue.

DISCUSSION

Federal Rule of Criminal Procedure 52(b) provides a court of appeals "a limited power to correct errors that were forfeited because not timely raised in district court." United States v. Olano, 507 U.S. 725, 731 (1993). In such cases, the reviewing appellate court may correct an error committed by the district court provided that the error is "plain" and that it "affects substantial rights."/1 Id. at 732. However, Fed. R. Crim. Pro. 52(b) does not authorize an appellate court to review errors that have been waived, rather than forfeited. This is because when a party performs a valid waiver, technically there can be no "error" to correct regarding the right or issue waived, so all appellate review of the issue is extinguished. See United States v. Newman, 148 F.3d 871, 879 (7th Cir. 1998) (citations omitted). Therefore, as the parties recognize, the threshold issue in this case is whether Cooper waived or merely forfeited any objection to the admission of the substance of the anonymous tip at trial.

Forfeiture is "the failure to make the timely assertion of a right," while waiver is "the 'intentional relinquishment or abandonment of a known right.'" Olano, 507 U.S. at 733 (citations omitted). Put another way, a forfeiture is an accidental or negligent omission (or an apparently inadvertent failure to assert a right in timely fashion), while a waiver is the manifestation of an intentional choice not to assert the right. We have found waiver where either a defendant or his attorney expressly declined to press a right or to make an objection. See, e.g., United States v. Richardson, No. 99-4309, slip op. at 5-6 (7th Cir. Jan. 25, 2001) (holding that a defendant waived an objection to a sentencing enhancement where at sentencing the court asked the defendant's lawyer whether he had an objection to the enhancement and the lawyer said "no"); United States v. Scanga, 225 F.3d 780, 783 (7th Cir. 2000); United States v. Staples, 202 F.3d 992,

995 (7th Cir. 2000).

Applying these standards, we find that Cooper waived any objection to the admission of the tip's substance at trial. In withdrawing his original motion in limine, Cooper's counsel repeatedly stated that he had no objection to the tip's admission, despite the magistrate's offer to require the government to brief the issue, and its reminder that he "certainly had a right to be heard" on the matter. Even more significantly, Cooper's counsel referred to the details of the tip during his opening statement and his cross-examination of Jaeger, and then reiterated them during his closing argument to bolster his theory of the case (by suggesting that Jetaun Brown was the only person who could have made the tip, and that she had done so perhaps out of frustration with both her husband and Cooper and because of her belief that they had plans to be with other women). Tr. Vol. 2 at 17-20. This was clearly a strategic decision rather than a mere oversight.

Cooper argues that, while his counsel waived any objection to the existence of the tip by withdrawing the motion in limine and failing to object at trial, he merely forfeited an objection to the admission of its substantive details. In support of this argument, Cooper notes that his counsel told the district court that he had no objection to the tip coming in "to explain the officer's actions." Cooper contends that this statement can be read as waiving an objection to the government's admission of the fact that the police had received an anonymous tip in order to explain why they had set up surveillance on Cooper, but not as waiving an objection to the substantive details of the tip. Noting that we must construe waiver principles liberally in Cooper's favor, see United States v. Perry, 223 F.3d 431, 433 (7th Cir. 2000), Cooper argues that we must find that he merely forfeited an objection to the admission of (or reference to) the tip's substance.

We reject this argument for several reasons. First, the motion in limine had sought to prevent the government from referring to either the existence or the substance of the tip. Cooper's counsel deliberately withdrew the motion, stating that he was doing so not only because he believed the tip could come in to explain the officer's actions, but also because discovery that he had conducted since he had filed the motion had uncovered new evidence. This suggests both that Cooper's counsel knew he was withdrawing an objection to the admission of the tip's substantive details, and that he was doing so (at least in part) for strategic reasons./2 Moreover, at no point did Cooper's counsel

indicate that he was preserving an objection to the substance as opposed to the details of the tip, despite having several opportunities to do so both before and during trial. This alone might well justify a finding of waiver. See United States v. Valenzuela, 150 F.3d 664, 667-68 (7th Cir. 1998) (holding that defendant waived his right to appeal the issue of whether he had dealt crack cocaine as opposed to some other form of cocaine base where the defendant's counsel "carelessly" conceded at sentencing that the defendant had dealt crack and did not include any limiting language in his concession). However, Cooper's counsel did much more than this. First, he brought the tip's substantive details out on his cross-examination of Jaeger and expressly referred to those details himself during both his opening statement and his closing argument./3 Moreover, he never asked for any kind of limiting instruction to mitigate the potential harm of the admission of the substantive details./4 Together, these actions demonstrate that Cooper's counsel deliberately chose to abandon any objection to the admission of the tip's substance.

We recently stated: "It is one thing to require judges to be alert to oversights that may affect substantial rights, and another to require them to override the clearly expressed wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right. The law has not taken the second step." Richardson, No. 99-4309, slip op. at 6. This principle applies with equal force here. Cooper's counsel made a clear strategic choice to use the substantive content of the tip. Even construing waiver principles liberally in Cooper's favor, we cannot characterize this as anything but a waiver.

One final point bears mentioning. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." Olano, 507 U.S. at 733 (citations omitted). In this case, Cooper has argued that the admission of (and the government's repeated reference to) the anonymous tip's substance violated his Sixth Amendment right to confront the witnesses against him. Constitutional rights, including the right to confrontation, can be waived. See United States v. Hamilton, 107 F.3d 499, 506 (7th Cir. 1997). However, "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.'"

Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (quotation omitted). We have decided that Cooper's counsel waived any objection to the admission of the tip's substance by strategically using it and by failing to object to its admission both before and during trial. However, the government has not asserted that Cooper personally waived his right to make the objection. Therefore, assuming arguendo that the government's references to the tip's substance implicated Cooper's rights under the Confrontation Clause, we must determine whether Cooper's counsel could have effectively waived Cooper's right to make the objection on Cooper's behalf, notwithstanding the general presumption against a defendant's acquiescence in the waiver of his constitutional rights.

The majority of circuits that have addressed this question have held or stated that a defendant's attorney can waive his client's Sixth Amendment confrontation right "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." United States v. Reveles, 190 F.3d 678, 683 n.6 (5th Cir. 1999) (internal quotation omitted). See United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999); Hawkins v. Hannigan, 185 F.3d 1146, 1155-56 (10th Cir. 1999); cf. Sahagian v. Murphy, 871 F.2d 714, 716 (7th Cir. 1989) (holding that defendant waived his right to confront a witness where his counsel objected to the government's request to delay the trial until the witness would be available for cross-examination and where there was some indication that the defendant had concurred in the objection, and no indication that he dissented); but see Carter v. Sowders, 5 F.3d 975, 981-82 (6th Cir. 1993) (holding that evidence that the defendant consented to not attend the video deposition of an adverse witness was required in order to bind him to his attorney's waiver of his confrontation rights). We agree with this conclusion. Since Cooper does not argue that he dissented from his attorney's decision to use the tip's substantive details and to refrain from objecting to the government's use of those details, and since Cooper has not presented any persuasive argument as to why the waiver could not have been a "legitimate trial tactic or part of a prudent trial strategy," we hold that his attorney effectively waived Cooper's right to object to the admission of the tip's substance, even if that right was guaranteed by the Sixth Amendment. See Reveles, 190 F.3d at 683 n.6.

CONCLUSION

We find that Cooper has waived any objection to the admission of or reference to the substantive details of the anonymous tip. Therefore, because there is no error to correct here, we decline to address Cooper's other arguments regarding plain error, and we AFFIRM his conviction.

/1 However, a court should exercise its discretionary authority to correct such an error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (citations omitted).

/2 In his reply brief, Cooper notes that the fact that his counsel stated that he was withdrawing the motion in limine because he thought that it would come in to explain the officer's actions suggests that he thought that the content of the tip was admissible, and did not realize that he could object to its admission. Therefore, Cooper argues that his failure to object to the admission of the tip's substance was a neglectful error rather than a deliberate tactical decision, and that his use of the tip's substance at trial was merely an attempt to explain the tip away (and to minimize its harmful effects) in light of his mistaken conclusion that it was admissible. However, as we have noted, Cooper's counsel stated that he wanted to withdraw the motion in limine at least in part because he had "obtained additional discovery." This suggests that Cooper's counsel thought that he could use the substantive details of the tip to his advantage at trial, and casts doubt on Cooper's claim that he referred to the tip's substance at trial only as a desperate attempt to repair the damage caused by its admission. Moreover, the claim that Cooper's counsel was not aware that he could object to the admission of the tip's substance seems implausible given that the district court expressly gave him more chances to object after he announced his initial intent to abandon the motion, and told him that he was "certainly entitled to be heard" on the motion.

/3 We find that Cooper's counsel's repeated reference to the substance of the tip at trial distinguishes this case from United States v. Krankel, 164 F.3d 1046 (7th Cir. 1998), which Cooper relies on for the proposition that we should apply the plain error analysis in this case. In Krankel, the defendant's counsel initially moved to exclude portions of a videotaped conversation to which the defendant was a party. However, on the morning of trial, the defendant's counsel withdrew the motion for tactical reasons, and thereafter failed to make any objection to the introduction of the unredacted tape at trial. While we used the

language of "waiver," we analyzed the defendant counsel's actions under principles of forfeiture, and concluded that because the failure to object to the admission of the tape was a tactical decision, its admission was not plain error. Id. at 1053. ("'[W]here a defendant fails to object to the admission of evidence at trial because of a tactical decision, we are even more reluctant to find plain error.'" Id. (quotation omitted)). Cooper argues that Krankel dictates that we review his counsel's actions for plain error as well. However, whereas Krankel's counsel merely withdrew and withheld objections to the admission of certain evidence for tactical reasons, Cooper's counsel affirmatively used the evidence to which he now objects as part of his theory of the case. We are hard-pressed to interpret this as a forfeiture, and Krankel does not hold that we must do so.

/4 In addition, because the motion in limine stated that "[a]nd objection to such evidence at trial, even if sustained and/or curative instructions given, would not remove the prejudicial effects thereof," it is clear that Cooper's counsel was aware even before withdrawing the motion in limine that he could ask for a limiting instruction.