In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3373

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CANDICE ROSENBERG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 145 C—**Barbara B. Crabb,** *Chief Judge.*

ARGUED SEPTEMBER 14, 2009—DECIDED OCTOBER 26, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* This appeal, like many others
we see, involves a squabble over what constitutes
properly considered "relevant conduct" under the
federal sentencing guidelines. Candice Rosenberg, a 60-
year-old nurse practitioner working in the area around
Rhinelander (Wisconsin), was charged in an 82-count
indictment with prescribing a variety of controlled sub-

stances—including oxycontin, vicodin, and fentanyl—to nine people, each of whom she knew did not have a legitimate need for the medications. In other words, the indictment claimed that Rosenberg's prescriptions were "not written in the usual course of professional practice" as required by the Controlled Substances Act. One of the nine recipients of Rosenberg's prescriptions died after allegedly overdosing on fentanyl.

Rosenberg pled guilty to one count (#35) of the indictment and, pursuant to a written plea agreement, the other counts were dismissed. Although the dismissed counts were gone, they were not forgotten. Their inclusion as part of Rosenberg's "relevant conduct" resulted in an ultimate guideline range (after taking into account a number of adjustments—up for using "special skill," as only properly licensed medical professionals can write prescriptions for controlled substances, and down for timely acceptance of responsibility) of 70 to 87 months. Rosenberg argued that only the facts in the count to which she offered her plea should be considered, which would have put her in a modest 6- to 12-month guideline range. The district court rejected her claim and imposed a 70-month sentence. Rosenberg appeals from that result.

A nurse practitioner is a registered nurse with an advanced degree in nursing. Nurse practitioners typically work in a variety of settings, including hospitals, clinics, health maintenance organizations, and nursing homes. Rosenberg, the evidence suggests, was not your typical nurse practitioner. Beginning in 2001, she maintained

her own private practice. Instead of having her own office, she made house calls, or met patients in a variety of unusual settings including a used-clothing store and a Wal-Mart parking lot. She prescribed pain medication to patients, sometimes without a physical examination and often with no more than scant knowledge of their medical history. Patients paid for prescriptions in cash, and she charged a higher price for narcotic medications than she did for nonnarcotic medications. Word apparently got out—if you need a drug that requires a prescription, Rosenberg is the person to see.

In April 2005, Rosenberg's rather unusual medical practice came to the attention of law enforcement officers.[1] One month later, the U.S. Attorney's Office informed her that she was the target of a federal investigation. During the investigations, law enforcement used an undercover officer and a confidential informant to purchase prescriptions from Rosenberg. They also interviewed Rosenberg several different times between April and July. Using the information obtained through these sources, a grand jury indictment was handed up a little over two years later.

At sentencing, Rosenberg made three objections to the presentence investigation report, only one of which she maintains on appeal—the inclusion of the prescriptions

---

[1] The "officers" were from a number of offices: the Oneida County sheriff's department, the federal Drug Enforcement Administration (DEA), and the Wisconsin Department of Regulation and Licensing.

written to four patients (which covered 52 of the counts in the indictment) as relevant conduct under the federal sentencing guidelines. The sentencing hearing began with the government's expert witness testifying that all of the prescriptions Rosenberg wrote, especially the prescriptions she objected to as relevant conduct, were written outside the usual course of professional practice. Rosenberg testified in her defense and explained how and why she wrote the prescriptions in question. The government then recalled its expert, and she testified that Rosenberg's explanation did not change her opinion. Finding Rosenberg's testimony to be "very frightening" and not truthful, the district court overruled her objections and sentenced her to 70 months.

On appeal, Rosenberg contends that the district court erred in finding the evidence sufficient to prove the prescriptions to which she objected were relevant conduct because the government did not show by a preponderance of the evidence that each was unlawful. In order for a prescription to be unlawful it must not have a legitimate medical purpose and must be dispensed outside the usual course of medical practice. *United States v. Chube*, 538 F.3d 693, 702 (7th Cir. 2008). Further, she argues that the evidence was not sufficient because the district court conflated the civil and criminal standards of liability. Neither argument is persuasive.

Rosenberg relies on a strained reading of *Chube* for the proposition that judges must specifically address every prescription they include in their relevant conduct determination. In *Chube*, two doctors were convicted of

unlawful distribution of controlled substances. At sentencing, the district court found that every prescription in the 98 patient files in evidence was relevant conduct by primarily relying on a spreadsheet that simply described the name and dosage of each drug and expert testimony that the prescriptions failed to meet the civil standard of care. Furthermore, the court only specifically mentioned 10 of the 98 files when imposing its sentence. On appeal, we upheld the convictions but remanded for resentencing, explaining that: "[w]hen the district court revisits relevant conduct on remand, it must explain its findings with respect to each patient and make a reasoned determination whether or not the Government has carried its burden of establishing that each prescription was dispensed outside the scope of medical practice and without a legitimate medical purpose." *Chube*, 538 F.3d at 705-06.

*Chube* requires the government to at least address every patient to whom a medical professional defendant has written an allegedly unlawful prescription. It is not necessary, however, for the government to systematically discuss every single prescription that every single patient received. That would be a duplicitous and meaningless procedural requirement. A district court may not, however, as it did in *Chube*, only discuss some of the patient files and extrapolate that, because some of the patients received prescriptions that had no legitimate medical purpose and were outside the usual course of medical practice, all of the prescriptions written to all of the patients had no legitimate medical purpose and were outside the usual course of medical practice.

Although the government did not systematically address every prescription Rosenberg wrote to the four patients, it presented ample evidence to prove that the prescriptions had no legitimate medical purpose and were written outside the usual course of appropriate medical practice. In fact, the prescriptions Rosenberg wrote to those four patients were the primary focus of a two-day sentencing hearing. The government's expert witness, Mary Jo Willis, a retired professor from the University of Wisconsin-Madison School of Nursing, discussed Rosenberg's interactions with all four of the patients in question. She pointed out Rosenberg's failings with each, things like not getting an adequate patient history or conducting a proper examination. Rosenberg also testified about the reasons she prescribed the medication to the four patients. Afterward, Willis reiterated her opinion that Rosenberg had written all of the prescriptions outside the usual course of medical practice. The comprehensive testimony given by Willis provided sufficient evidence for the district court to conclude that the prescriptions written to the four patients were out of bounds and thus includable as relevant conduct.

Furthermore, the district court did not properly mix the criminal and civil standards of liability. As we stated in *Chube*, "[i]t is impossible sensibly to discuss the question whether a physician was acting outside the usual course of professional practice and without a medical purpose without mentioning the usual standard of care." 538 F.3d at 698. Although the district court mentioned the civil standard of liability, it only did so to illuminate the criminal standard, which it repeatedly stated.

For the first time on appeal, Rosenberg challenges the inclusion as relevant conduct of prescriptions other than those we have just discussed. Those prescriptions, written to five "patients," covered 29 of the counts in the indictment. By choosing not to make these objections to the district court, Rosenberg waived them and thereby precluded appellate review. *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). Since Rosenberg knew she could object to the inclusion of all of the prescriptions as relevant conduct, it is clear that she chose only to make limited objections for strategic reasons. But what did Rosenberg have to gain by choosing not to object to everything at the district court? Easy. She was awarded a 3-level reduction to her guideline range for acceptance of responsibility. If Rosenberg had challenged any more of the prescriptions—certainly if she challenged all of the prescriptions—she may not have received the 3-level reduction. Thus, other than her challenge to the prescriptions we have discussed, Rosenberg waived any challenge to the other prescriptions.

Accordingly, the judgment of the district court is AFFIRMED.