# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1606

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FELIPE RANGEL,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 02 CR 6—**Allen Sharp**, *Judge.*

———————

ARGUED OCTOBER 21, 2003—DECIDED NOVEMBER 25, 2003

———————

Before BAUER, DIANE P. WOOD, and EVANS, *Circuit
Judges.*

BAUER, *Circuit Judge.*   After a three-day jury trial,
defendant Felipe Rangel was found guilty of two counts of
selling, distributing, or dispensing powder cocaine in vio-
lation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was
ultimately sentenced to sixty-three months of incarceration,
four years of supervised release, and a two hundred dollar
special assessment. Rangel appeals his conviction on
various evidentiary grounds. We affirm.

## BACKGROUND

In August 2001, Jose Antonio "Tony" Garcia (Garcia)
approached Jorge, a confidential informant for the Drug

Enforcement Administration (DEA), and offered to supply him with cocaine. In keeping with the drug culture tradition of "the first one's always free," Garcia gave Jorge a small sample of powder cocaine on September 19, 2001. Apparently satisfied, Jorge arranged three separate deals for one ounce each in the month of November. Garcia engaged in two more transactions with Jorge.

At about 12:40p.m. on December 12, 2001, a silver BMW, driven by Garcia's cousin, defendant Rangel, pulled up in the alley behind Garcia's house. Shortly thereafter, Garcia got into Jorge's car and delivered 1/4 kilogram of cocaine. Garcia then got out of Jorge's car, entered the silver BMW and Garcia and Rangel drove to Pepe's Restaurant. There Garcia gave Rangel $6,300—his share of the money from the deal.

Garcia and Rangel sat in the bar for a while drinking beer. At one point, Rangel left the restaurant and spoke on his cellular phone. At some point, local police arrived and asked to see some identification. Rangel presented an Illinois State Identification card bearing the name Felipe Rangel. Rangel and Garcia left the restaurant.

Planning for the arrest of Garcia and Rangel, the DEA had Jorge set up another deal for 1/4 kilogram of cocaine. The deal was to take place at noon on January 4, 2002 in the same area as the December deal. At the appointed time, Jorge pulled up in front of Garcia's house and watched him pacing around the front yard. Garcia could see Jorge's car but did not approach. Garcia used his father's phone to page Rangel. When he received no response, Garcia called Rangel's cellular phone.

At 12:18p.m. Rangel arrived in the silver BMW. Garcia got into the car. Rangel drove the length of one house, stopped, and let Garcia out of the car. As Rangel turned into the alley, Garcia walked back to Jorge's car. DEA agents moved in and arrested both Garcia and Rangel. Garcia

admitted that he had sold cocaine to Jorge six times and claimed that he had obtained the cocaine from Rangel each and every time. Both Garcia and Rangel were charged with various drug offenses. Garcia agreed to cooperate in exchange for leniency.

Prior to trial, Rangel stated to the court that he intended to subpoena various phone records for Garcia's and Rangel's phones. The government stated that it would subpoena the very same records and provide them to the defendant. Rangel agreed to this and, on the morning of trial, the government turned over to Rangel a large amount of files pertaining to calls made from Garcia's home phone, Garcia's father's cellular phone, and Rangel's cellular phone.

During the trial, Garcia testified that he began selling drugs for Rangel in the summer of 2001. In an attempt to corroborate this testimony, the government sought to enter into evidence a "summary chart" which summarized the number of calls between Rangel and Garcia during the relevant time frame. The defense objected to the chart for lack of foundation and lack of completeness. The objection was sustained. At the close of evidence on the first day of trial, the government again moved to have the summary chart introduced into evidence. The judge deferred a decision on the matter until the following morning. That morning, the defendant again objected to the claimed expert testimony regarding the summary charts for lack of foundation. He requested that the testimony be stricken. The objection was overruled. Later, when the government requested that the summary chart be received into evidence, the court allowed it. The court refused to allow Rangel to make a record of his objection at that time.

At the jury conference, Rangel objected to an instruction which told the jurors to assume that the summary chart "truly and accurately" reflected the original records. His basis for the objection was that the chart was not a sum-

mary of all of the data but rather, a partial summary. This objection was also overruled.

The jury deliberated for five hours and found the defendant guilty of selling, distributing, or dispensing powder cocaine on the dates of December 12, 2001, and January 4, 2002. He was found not guilty on the other four counts dealing with the drug transactions on September 19, November 1, November 15, and November 20, 2001.

## DISCUSSION

A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Brown*, 289 F.3d 989, 994 (7th Cir. 2002). When a party fails to properly object to the admission of evidence at trial, we review for plain error. *United States v. Curtis*, 280 F.3d 798, 801 (7th Cir. 2002). Plain error will be found only when the exclusion of the erroneously admitted evidence probably would have resulted in an acquittal. *United States v. Krankel*, 164 F.3d 1046, 1052 (7th Cir. 1998).

### A. Summary Chart

Rangel's first argument is that his conviction should be reversed because the government failed to abide by Federal Rule of Evidence 1006. That section requires a party seeking to introduce a summary of voluminous records to provide copies of the those records to the opposing party at a reasonable time and place. A "reasonable time and place" has been understood to be such that the opposing party has adequate time to examine the records to check the accuracy of the summary. *Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 523 (7th Cir. 1983). Rangel's argument is unpersuasive.

Rangel objected to the introduction of the summary chart in question a number of times. Never once during trial did

he object on the grounds that he had not had adequate time to examine the original records. When a defendant fails to state the grounds for an objection at trial, the issue is waived absent a showing of plain error. *Curtis*, 280 F.3d at 801 (citing *Krankel*, 164 F.3d at 1052).

The record reveals no plain error in admitting the summary charts. First, the purpose behind Federal Rule of Evidence 1006 is to allow the opposing party adequate opportunity to check the accuracy of the summary against the original records. *Canada Dry Corp.*, 723 F.2d at 523. Rangel does not claim that the summary charts were inaccurate. Second, it appears the jury rejected the inference to be drawn from the phone records. The records were offered to show a sharp increase in calling activity between Garcia and Rangel during the time period when Garcia claimed he was selling cocaine obtained from Rangel. The government argued that the pattern of calls led to the reasonable inference that Garcia was telling the truth about Rangel being the supplier of the cocaine in question. The jury acquitted Rangel on the first four counts and found him guilty on the final two counts. As the defendant was physically present at the scene of the drug deals underlying those two counts for which he was convicted, and not present at the four for which he was acquitted, it appears the jury put little stock, if any, in the phone records. Since it is unlikely that exclusion of the summary charts would have changed the outcome of the case, we find no plain error in the admission of the evidence.

### B. Expert Testimony Relating to "Negotiation Calls"

Rangel argues that a DEA agent witness invaded the province of the jury and offered improper expert testimony by testifying that certain phone calls were for the purposes of negotiation. The transcript of the testimony belies this argument.

Rangel says the DEA agent witness

> offered an opinion as to the content and purpose of the calls represented on the chart, an opinion not founded on the facts represented by the exhibit itself but, apparently, on either an "expert" opinion held by the agent himself or his reliance upon the word of co-operating witness Garcia, the only witness to claim actual knowledge of the content and purpose of the communications.

(Appellant's Br. at 16.) The essence of the argument is that no one, except the parties to the call, actually know what was said between Rangel and Garcia during their telephone conversations. If this is so, Rangel argues that the agent witness should not be allowed to speculate as to the meaning or content of the call. The agent did no such thing. A single sentence from the transcript of the agent's testimony shows this. "[A]ll of the other transactions were preceded by a series of negotiations, *phone calls between the confidential source, Jorge, and Mr. Garcia.*" (Tr. Vol. II at 160) (emphasis added). The testimony does not delve into the content of phone calls between Garcia and Rangel. The negotiation phone calls between Garcia and Jorge were made pursuant to the requests of the testifying agent. Furthermore, these calls were recorded and their transcripts were admitted into evidence. The testimony was not improper.

For the reasons stated above, we AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—11-25-03