# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3176

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RICKEY EARL BANKS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 CR 182—**Joan B. Gottschall**, *Judge.*

———————

ARGUED SEPTEMBER 15, 2004—DECIDED APRIL 21, 2005

———————

Before FLAUM, *Chief Judge,* and COFFEY and KANNE,
*Circuit Judges.*

KANNE, *Circuit Judge.* In March 2002, a jury convicted
Rickey Earl Banks of possession with intent to distribute
cocaine in federal district court. Banks was sentenced to 97
months in prison pursuant to the Sentencing Guidelines. He
directly appeals the conviction on five different grounds. We
review the sentence sua sponte in light of the
Supreme Court's recent decision on the constitutionality of
the Sentencing Guidelines. For the reasons stated herein,

we affirm the conviction and order a limited remand to the district court to determine whether resentencing is warranted.

## I. History

On March 1, 1996, Joliet Police Officer James Reilly received a tip from a confidential informant that a drug transaction was going to occur that evening. The informant, Johnny Banks, was the brother of Rickey Banks ("Banks") and had agreed to cooperate with the police in order to improve his own bargaining position with respect to a pending charge of cocaine possession. Johnny Banks advised Reilly that "Rickey and the boys" planned to deliver two to three kilograms of cocaine to Raymond Jackson at 2132 California Avenue (the home of Rickie Evans) between 9 and 10 P.M.[1] Reilly and three other police officers set up surveillance of the address in two different unmarked cars.

Shortly after 9 P.M., two vehicles arrived on the premises: a car driven by Jackson, and a Jeep driven by Banks. The occupants of the vehicles briefly met in the driveway. The two vehicles then left the address, with Jackson driving the car and Banks driving the Jeep. Rickie Evans, who had been standing in the yard, joined Banks and his other passenger, Michael Poston, in the Jeep. One unmarked police car followed Jackson's car and after a few minutes attempted to stop it. Before Jackson pulled over, he ejected a package from the window which the police recovered and

---

[1] In voir dire, Johnny Banks testified that he gave the time and the place of a drug transaction, that it was to take place between Rickie *Evans* and Raymond Jackson, and that the time was to be between 8:00 and 8:30 P.M.

suspected to be cocaine.[2] The officers in this car radioed the information about the suspected cocaine to the other unmarked car, which had been following the Jeep. The police then tried to stop the Jeep, which drove several blocks before pulling over. Banks, Evans, and Poston were arrested, and in a subsequent search of the Jeep a handgun was found under the right rear passenger seat. After being advised of his *Miranda* rights, Banks admitted that both the Jeep and the gun belonged to him.

Later on March 1, Rickie Evans agreed to cooperate with the police. Based on information received from Evans, a search warrant for Darlene April's apartment was obtained and executed early on March 2. April is the mother of Banks's nephew, and Evans had gone with Banks to check on the nephew on February 29. While the men were in the apartment, Banks also "checked on" a kilo of cocaine that he was storing in a kitchen light fixture. April allowed Banks to store cocaine in her apartment so she could take some of it for her personal use. The March 2 search led to the discovery of over 800 grams of cocaine stored in the kitchen light fixture. The bag in which the cocaine was stored bore Banks's fingerprint.

A grand jury indicted Banks on two counts of possession with intent to distribute cocaine (one count for the 999 grams of cocaine ejected from Jackson's car and one count for the 870 grams of cocaine seized from April's light fixture). Attorney Harvey Bass represented Banks prior to his trial. Bass filed a motion to quash arrest and suppress evidence related to the prosecution, which was denied. The day the trial was scheduled to begin, R. Eugene Pincham began assisting Bass as defense counsel. The defense team

---

[2]   Subsequent laboratory testing showed that the package indeed contained approximately 999 grams of powder cocaine.

orally renewed Banks's motion to suppress evidence, and after a hearing complete with witnesses and argument, the motion was again denied.

During trial, Pincham conducted all witness examinations, participated in sidebar conferences, and gave opening statement and closing argument. After a nine-day trial, the jury acquitted Banks of count one (the cocaine ejected from Jackson's car) and convicted him of count two (the cocaine seized from April's apartment).

The district court sentenced Banks under the federal Sentencing Guidelines. His total offense level was 29: the jury's conviction led to a base offense level of 26, and the judge added two two-point enhancements (for presence of a firearm and obstruction of justice) before granting a one-point reduction for post-offense rehabilitation. U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c)(7), 2D1.1(b)(1), 3C1.1, 3E1.1(b). Banks was placed in Criminal History Category II because of his three prior convictions for battery, unlawful use of a weapon, and harassment. As a result, Banks's sentence was 97 months.

Banks filed his notice of appeal on August 15, 2003, ten days after being sentenced. His opening appellate brief indicated that he was challenging his conviction on several grounds, including ineffective assistance of counsel with respect to Attorney Bass.[3] Approximately two weeks after filing his opening brief, Banks filed a motion in the district court to supplement the record with Attorney Registration and Disciplinary Commission ("ARDC") proceedings. The district court granted this motion over the government's objection.

---

[3] Attorneys Bass and Pincham, who represented Banks prior to and during his trial, were replaced by three other attorneys in succession during post-trial proceedings and sentencing. His two current attorneys, then, are the sixth and seventh to represent him in this case.

## II.  Analysis

At the outset, we note that the transcripts include many open court musings of the district judge as she decided the issues before her. In verbally weighing both sides of each issue on the record, the judge obviously vocalized points weighing in favor of Banks's position on a number of occasions. On appeal, Banks supports many of his arguments with citations to these musings. We must review the decisions of the district court in the same way as if they were decisively made with no back and forth commentary: that is, based on the applicable law and the evidence in the record. That said, we will consider in turn each of the grounds upon which Banks challenges his conviction and then discuss the sentencing issue.

### A.  Prosecutorial Misconduct

Banks claims that he was deprived of his right to a fair trial because of repeated prosecutorial misconduct. This argument is not well founded; we do not find improper conduct on the part of the Assistant United States Attorney ("AUSA") on any of the four bases discussed by Banks.

### 1.  Brady *material*

In *Brady v. Maryland*, the Supreme Court held that an AUSA's failure to disclose favorable, material evidence to a defendant violates due process. 373 U.S. 83, 87 (1963); Fed. R. Crim. P. 16(a). "Evidence is 'material' if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Bastanipour*, 41 F.3d 1178, 1181 (7th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). The three elements of a *Brady* violation are: (1) evidence favorable to the defendant because it is exculpatory or impeaching; (2) suppression of such evidence

by the government; and (3) ensuing prejudice. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). In this case, Banks did not raise a *Brady* issue in the district court, so we review for plain error. *See United States v. Stott*, 245 F.3d 890, 900 (7th Cir. 2001).

Banks's *Brady* argument revolves around the confidential informant (his brother, Johnny Banks) whose tip led to the investigation and conviction at issue here. Banks claims that the existence of the informant was not disclosed to him until February 24, 2002, the day before his trial was to begin, and that he therefore was unable to effectively challenge probable cause for his arrest and Reilly's credibility in obtaining the search warrant of April's apartment. Banks also takes issue with the fact that the identity of the confidential informant was never revealed to him, again claiming that he was unable to attack the veracity of the officer (Reilly) preparing the affidavit for the search warrant.

There is no *Brady* violation here. First of all, there is no evidence of suppression: the record shows that Banks knew a confidential informant existed well before trial. The government's written response in opposition to defendant's motion to quash arrest and suppress evidence, filed in December 2001, states that "[o]n or about March 1, 1996, law enforcement officers received information from a confidential informant that Raymond Jackson, an individual known to be involved in narcotics trafficking, was going to pick up a quantity of cocaine at 2132 California, Lockport, Illinois that evening between 9:00 and 10:00 p.m." (R. 18 at 1-2.)[4] It is well established that the government may withhold

---

[4] The government notes that, in addition to this written response, a report containing reference to a confidential informant was

(continued...)

the identity of a confidential informant in furtherance of the public interest in law enforcement unless the identity is relevant or helpful to the defense or essential to a fair determination of cause. *See Roviaro v. United States*, 353 U.S. 53, 59-61 (1957). Banks knew an informant existed and could have litigated the issue of whether he was entitled to learn the informant's identity.

Even without knowledge of the existence or identity of the informant, Banks would not have been prejudiced. He was able to discern the identity of the informant based on the police testimony given in the first suppression hearing, and, because the district court reopened the hearing on Banks's motion to suppress, he was able to examine Johnny Banks. On the issue of probable cause to arrest, Johnny Banks actually corroborated Reilly's testimony. He admitted to tipping off the police about the drug deal and provided no exculpatory or impeaching evidence. Regarding the search of April's apartment, as Banks's trial counsel correctly stated on the record, Banks had "no standing to make a motion to suppress as to what somebody else had." (Tr. at 180.) *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). There is no probability that, had the AUSA disclosed the existence and identity of the confidential informant, Banks's trial would have ended in a different result.

---

[4]  (...continued)
given to the defense in April 2001, and that information regarding the informant was discussed with defense counsel orally prior to that. (2/25/02 Tr. at 18-19.)

### 2. Evans's testimony

In her examination of Rickie Evans at trial, the AUSA elicited testimony regarding the bond hearing at which Evans, Banks, and Poston were all present:

Q: What happened at the bond hearing?

A: The Judge asked us whose gun it was that they found in the Jeep.

Q: The Judge asked you?

A: Yes.

Q: And did you answer?

A: No, every—we was waiting on—well, I was waiting on Mr. Banks to answer.

Q: And did he answer?

A: It took a while.

Q: Did he answer?

A: Eventually, yes.

Q: What did he say?

A: He said it was his.

(Tr. at 1359.) Banks did not object to the testimony on this subject, but at the end of the direct examination moved for a mistrial on the ground that the judge at the bond hearing asked Banks about the gun without a *Miranda* warning. Banks now alleges that the AUSA purposely elicited this testimony in violation of his constitutional rights, and that his conviction should be reversed because the alleged misconduct deprived him of a fair trial. *See generally United States v. Badger*, 983 F.2d 1443, 1450 (7th Cir. 1993).

The district court struck the evidence but denied Banks's motion for a mistrial.[5] We agree with the district court that there was nothing wrong with the AUSA's questions, but that the evidence (Evans's answers) presented the potential problem. (*See* Tr. at 1416.) Finding no prosecutorial misconduct with regard to Evans's questioning, we review the court's decision to strike the challenged evidence and deny the motion for mistrial for abuse of discretion. *United States v. Smith*, 308 F.3d 726, 739-40 (7th Cir. 2002).

The challenged evidence being presented to the jury does not constitute the type of prejudice to Banks that would warrant a mistrial. Jurors are presumed to follow limiting and curative instructions except in unusual cases where the evidence improperly before them is "so powerfully incriminating that they cannot reasonably be expected to put it out of their minds." *Id.* at 739. Even if the jury did consider this allegedly improper admission (or if the judge had not had it stricken), the error would have been harmless: the evidence relating to Banks's ownership of the gun was cumulative, as Banks's own admission to police after his arrest and *Miranda* warning that the gun was his was admissible. We also note that Banks was actually acquitted of the count most closely related to the gun and the drugs ejected from Jackson's car. There was no abuse of discretion in denying a mistrial based on Evans's testimony.

### 3. improper impeachment

Banks argues another instance of prosecutorial misconduct with respect to the government's attempted impeach-

---

[5] Although it did not contest striking the evidence at trial, the government does not concede that the evidence in question was unconstitutional. It is not clear from the record whether Banks was represented by counsel at the bond hearing or whether the judge in that proceeding issued a proper *Miranda* warning.

ment of him with statements he allegedly made to Darlene April. During cross-examination, the government asked Banks whether he had admitted to April that the gun found in the Jeep was his, to which he replied that he had not. The government did not recall April in its rebuttal to perfect impeachment. Although Banks now asserts that an AUSA has a duty to complete impeachment when a witness denies making a prior inconsistent statement, the defense did not object to the failure of the government to recall April at trial. As a result, we review for plain error. *See United States v. Jungles*, 903 F.2d 468, 478 (7th Cir. 1990).

Banks cites *United States v. Mackey*, 571 F.2d 376 (7th Cir. 1978), for the proposition that the government was duty-bound to perfect the impeachment of Banks by re-calling April. It is true that "[i]t is improper conduct for the Government to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth." *United States v. Harris*, 542 F.2d 1283, 1307 (7th Cir. 1976). Neither *Mackey* nor *Jungles*, however, mandates a duty to perfect impeachment. *See Mackey*, 571 F.2d at 386 (expressing reservation that there is ever a duty to complete an impeachment); *Jungles*, 903 F.2d at 478 ("[T]he government does not have a duty in every case to introduce the factual predicate for a potentially prejudicial question posed on cross-examination.").

The AUSA in this case might have had reason to believe that Banks had told April that the gun was his. In any case, the failure to perfect Banks's impeachment was harmless and could not constitute plain error, which may be found only when the exclusion of the evidence probably would have resulted in an acquittal. *United States v. Krankel*, 164 F.3d 1046, 1052 (7th Cir. 1998). As discussed above, any evidence of Banks's ownership of the gun was cumulative, as his admission to the arresting officer was clearly admis-

sible. Moreover, the district judge advised the jury that "questions and objections by the lawyers are not evidence." (Tr. at 1998.)

### 4. closing remarks

Finally, Banks contends that the AUSA, in her closing argument, argued facts not in evidence linking Banks to the cocaine found in April's apartment. Because Banks did not object to the government's closing argument in the district court, we review for plain error. *See United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003).

The statements in the closing argument with which Banks takes issue were not improper. The AUSA stated that Banks admitted to both Evans and April that the cocaine was his, and the record supports this statement. Evans testified that when he and Banks were at April's apartment prior to their arrest, Banks said he had to "check on something," proceeded to pull the cocaine down from the light fixture, and said, "Darlene would be dipping." (Tr. at 1346-47.) April testified that she spoke with Banks after the cocaine had been seized from her apartment and that Banks complained of not knowing who told the police about "[h]is drugs being in [April's] house." (Tr. at 1128.) It is a reasonable inference that Banks's words and conduct, reflected in this testimony, constituted admissions that he was the owner of the cocaine stored in April's apartment. Because the AUSA's statements were proper, there is no plain error in the closing argument.

We do not find prosecutorial misconduct in this case. Even if the AUSA had acted improperly in any of the situations Banks challenges—in the disclosure of the informant, testimony elicited from Evans, impeachment of Banks, and closing remarks—Banks's conviction would not rightly be reversed based on deprivation of a fair trial. *See Badger*, 983 F.2d at 1453-54. The informant's testimony was not

favorable to Banks, the testimony and questions linking Banks to the gun found in his Jeep were cumulative, and the AUSA's closing remarks were supported by evidence in the record.

### B.  Ineffective Assistance of Counsel

Before evaluating Attorney Bass's representation under *Strickland v. Washington*, 466 U.S. 668 (1984), we must decide whether the ARDC materials in the supplemental record are properly before this court.[6] The district court allowed these materials to be added to the record on April 21, 2004, despite some apparent reservations that, because the ineffective assistance claim "appears to be limited to counsel's performance at trial rather than obviously extrinsic matters," it "could arguably be resolved based only on a review of the trial record." (R. 105.)

Rule 10(e) allows for correction or modification of the record "[i]f any difference arises about whether the record truly discloses what occurred in the district court[.]" Fed. R. App. P. 10(e)(1). "[T]he difference must be submitted to and settled by [the district] court and the record conformed accordingly." *Id.* This rule is meant to ensure that the record reflects what really happened in the district court, but "not to enable the losing party to add new material to the record in order to collaterally attack the trial court's judgment." *United States v. Elizalde-Adame*, 262 F.3d 637,

---

[6] The materials include: (a) a May 1998 petition to impose discipline on consent for conversion of client funds that occurred in 1993; (b) an August 2002 ARDC complaint alleging neglect and deceit with respect to client matters, deception in the lease and purchase of three cars, and failure to cooperate with the ARDC; (c) a 2003 petition and order of guardianship; (d) a 2003 psychiatric summary; and (e) a 2003 order granting Bass's motion for transfer to inactive disability status.

641 (7th Cir. 2001). In this case, Bass's ARDC proceedings were neither relied upon by the district court nor relevant to its decisions; they cannot be added to the record pursuant to Rule 10(e).

Case law does not help Banks's argument to supplement the record any more than the rules of appellate procedure do. We have repeatedly stated that extrinsic evidence may not properly be introduced in connection with an ineffective assistance claim on direct appeal. *See, e.g.*, *Galbraith v. United States*, 313 F.3d 1001, 1007-08 (7th Cir. 2002) ("A reviewing court on direct appeal is limited to the record of trial and cannot consider any extrinsic evidence that may be necessary to support the ineffective counsel claim."); *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991) ("[T]he defendant can in his direct appeal . . . ask the court of appeals to hold that the unadorned trial record demonstrates that he was denied his right to effective assistance of counsel; such a challenge is necessarily limited to the trial record, since a court of appeals does not take evidence.") (citations omitted). Where the district court has erroneously granted a motion to supplement the record with evidence that it has not relied upon, we have refused to consider it. *See United States v. Noble*, 299 F.3d 907, 911 (7th Cir. 2002) (declining to consider evidence added to the record in response to the government's motion to supplement the appellate record after the appeal was filed).

We therefore evaluate Bass's representation of Banks in the court below based only on the unsupplemented record. Banks points to three errors made by Bass: his failure to demand discovery of the confidential informant, his failure to prosecute a motion to suppress evidence, and his failure to move for a new trial. Under *Strickland*, Banks must show both that his attorney's performance was outside the range of professionally competent assistance and that the deficient performance denied him a fair trial. *See* 466 U.S. at 687-88, 694. We reverse "only when it has been shown

with a reasonable probability that, but for counsel's un-professional errors, the result of the proceeding would have been different." *Lowery v. Anderson*, 225 F.3d 833, 843 (7th Cir. 2000) (citation omitted).

There is a strong presumption for finding counsel effective, and Banks bears the burden of proving otherwise. *See United Sates v. Pergler*, 233 F.3d 1005, 1008-09 (7th Cir. 2000). In cases such as this, where counsel has succeeded in having his client acquitted of at least one of the charges brought, the presumption is likely to be even more difficult to rebut. Because it is easier to dispose of this ineffectiveness claim on the ground of lack of sufficient prejudice, though, we will follow that course. *See Strickland*, 466 U.S. at 697.

Bass's initial failure to demand information regarding the identity of the confidential informant was immaterial because, as we have already discussed, Banks was able to examine the informant before trial and, in the end, the informant corroborated the government witness's testimony and was not helpful to Banks. Likewise, any errors Bass made with respect to his motion to suppress (including failure to file a memorandum in support of that motion) did not result in prejudice; the district judge reopened the suppression issue and denied the motion after a full hearing with argument and witnesses in which both Bass and Pincham represented Banks. Banks was not entitled to suppression of any evidence, so nothing his counsel could have done with respect to this motion could have resulted in prejudice.

Finally, we consider Bass's failure to timely move for a new trial. At a hearing on the government's motion to revoke bond, the district judge found that there was a substantial likelihood that a new trial motion would be

granted.[7] Banks claims that this statement satisfies the prejudice prong of *Strickland*.

We do not agree that the district judge's comments in the bond hearing are sufficient to establish a reasonable probability that, had Bass made a timely motion for a new trial, Banks would have obtained a different result. None of the grounds on which Banks challenges his conviction in this appeal have merit, and the basis on which the judge made her finding is unclear. The judge also made post-trial comments that cut against Banks's position that a new trial would have been granted; at sentencing, for example, she overruled Banks's objections to an enhancement for the gun and indicated that there was no merit to the allegations of arrest without probable cause. We do not find prejudice based on a judge's out-of-context comment but rather look at the substantive record as a whole. Finding nothing warranting a new trial, we do not believe that Banks was prejudiced by his counsel's failure to file the motion.

By making this claim on direct appeal, Banks has waived the right to raise an ineffective assistance claim in a collateral attack under 28 U.S.C. § 2255. At oral argument, Banks's counsel indicated that he wished to pursue the ineffective assistance claim in this appeal regardless of whether the ARDC materials were considered, knowing that this course of action precluded him from raising the issue of Bass's representation again in a future appeal.

### C. Insufficient Evidence

Banks's claim that the government produced insufficient evidence of cocaine possession with intent to distribute is without merit. Because he did not renew his motion for a

---

[7] Such a finding was necessary to avoid taking Banks into immediate custody under 18 U.S.C. § 3143.

judgment of acquittal at the close of all the evidence or within seven days of the verdict, Banks is entitled to reversal based on insufficient evidence only if he demonstrates a "manifest miscarriage of justice." *See United States v. Taylor*, 226 F.3d 593, 596 (7th Cir. 2000). Banks now folds this claim into his ineffective assistance claim, asserting that his counsel's incompetence is to blame for its forfeiture and that reversal is warranted if, viewing the evidence in the light most favorable to the government, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984) (setting out insufficient evidence standard when claim has not been forfeited). The evidence in this case is sufficient to withstand scrutiny under either standard.

The three elements necessary for conviction under 21 U.S.C. § 841 are (1) knowing or intentional possession of cocaine, (2) possession of cocaine with the intent to distribute it, and (3) knowledge that the material is a controlled substance. *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir. 1995). At issue here is the first element. Banks says that the only evidence linking him to the cocaine found in April's apartment was one fingerprint, and that this is inadequate for conviction. *See United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (fingerprint on gun in wastebasket near where defendant was standing but in someone else's apartment insufficient to prove constructive possession); *United States v. Chesher*, 678 F.2d 1353, 1358 (9th Cir. 1982) (fingerprint on methamphetamine manufacturing equipment and access to equipment insufficient to prove possession). *But cf. United States v. Wilson*, 922 F.2d 1336, 1338-39 (7th Cir. 1991) (fingerprint on gun found at defendant's girlfriend's apartment sufficient to prove possession).

We can set aside the question of whether the fingerprint alone is sufficient evidence of possession, because Banks's

account of the government's evidence leaves out testimony from two important witnesses. Evans testified that Banks had gone to April's apartment and checked on the cocaine to see if April had been "dipping in it," revealing Banks's control over and interest in the cocaine. Furthermore, April testified that she allowed Banks to store cocaine in her apartment. Clearly, this testimony (along with the fingerprint) constitutes evidence more than sufficient for a reasonable jury to find that Banks was in constructive possession of the cocaine in April's apartment.

### D. Probable Cause for Arrest

Banks next argues that the district court erred in denying his motion to suppress evidence, claiming that the police lacked probable cause to arrest him and that his arrest thus violated the Fourth Amendment. Banks makes this claim based on allegedly inconsistent testimony from the police officers involved in his arrest and the search of April's apartment. When evaluating a district court's ruling on a motion to suppress, we review questions of law *de novo* and findings of fact for clear error. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002).

It is well settled that probable cause can be established by an informant's tip along with corroboration by police work. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 241-45 (1983); *United States v. McClinton*, 135 F.3d 1178, 1183-84 (7th Cir. 1998). In this case, the confidential informant's testimony plus Banks's own admissions are enough to establish probable cause based on the tip-plus-corroboration formula. Johnny Banks testified that he informed Reilly that a drug deal was going to take place at 2132 California Avenue on the evening of March 1. The police set up surveillance based on this information. Banks admits that, on that evening, he arrived at the California Avenue address and met briefly

with Jackson in the driveway before all four men involved left the residence. Banks concedes that Jackson ejected cocaine from his car after leaving the premises and never questioned that the officers who arrested him were aware of that fact. All of this corroborates the tip from Johnny Banks and suggests that a drug transaction did occur. We affirm the district court's determination of probable cause for Banks's arrest, and need not go into any discrepancies in police testimony.

### E. District Court Errors

Finally, Banks claims that he was denied a fair trial due to cumulative errors of the district court. District court errors must be considered in the aggregate on appeal; while individual errors might be considered harmless, there are some cases in which the cumulative harm done is no longer insignificant. *United States v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000). This, however, is not such a case. We find no error in most of the decisions with which Banks takes issue. The error that might have been made with respect to a dog alert was clearly harmless; corrective jury instructions were given, and Banks was ultimately acquitted of the charge related to the cocaine ejected from Jackson's car, which was the only charge to which the dog sniff would have been relevant.

#### 1. evidence of prior drug activities

The district court allowed testimony from April about Banks's history of storing cocaine in her apartment to be admitted. Banks argues that this was an impermissible use of character evidence. *See* Fed. R. Evid. 404(b) (prohibiting evidence of other crimes, wrongs, or acts from being used to prove the character of a person in order to show action in conformity therewith). We review the district court's

evidentiary rulings for abuse of discretion. *United States v. Rangel*, 350 F.3d 648, 650 (7th Cir. 2003).

The government elicited the testimony regarding Banks's prior practice of storing cocaine in her apartment on re-direct examination, after the defense questioned April about where she obtained all of the cocaine she used. We agree with the district judge that the cross-examination opened the door for testimony on the cocaine Banks had stored in her apartment prior to this incident. Rather than being impermissible character evidence, the testimony was properly admitted as evidence to show that Banks had op-portunity, knowledge, and intent to store drugs in April's apartment. *See* Fed. R. Evid. 404(b). All four prongs of the test for admissibility set forth in *United States v. Anifowoshe* are met: (1) the evidence is directed to April's reason for believing the cocaine seized belonged to Banks and absence of mistake rather than to his propensity to commit the crime; (2) Banks's use of April's apartment for cocaine storage occurred within five years of the charged offense, making it close enough in time to be relevant; (3) April's testimony was corroborated by Evans and by Banks's fingerprint, making it sufficient to support a jury finding that Banks committed a similar act; and (4) the evidence was highly probative of the central issues of whether Banks intentionally and knowingly possessed the cocaine in April's apartment and was not unfairly prejudi-cial. *See* 307 F.3d 643, 646 (7th Cir. 2002).

### 2. gun evidence

The district court allowed the government to introduce evidence of the gun found in Banks's Jeep the night of his arrest. After a proper *Miranda* warning, Banks admitted to the arresting officer that he owned the gun. Banks now argues that the district court erred in admitting evidence of the gun because it was unfairly prejudicial and its probative value was outweighed by the prejudice. *See* Fed. R. Evid.

403. Again, we review the district court's ruling on ad-missibility for abuse of discretion. *See Rangel*, 350 F.3d at 650.

This court has often said that guns are "tools of the trade" for drug dealing. *See, e.g.*, *United States v. Wyatt*, 102 F.3d 241, 248 (7th Cir. 1996). It seems obvious, then, that the gun found in Banks's Jeep immediately after he met with Jackson would be relevant to the question of whether Banks had sold Jackson the cocaine ejected from his (Jackson's) car as charged. Banks argues that the gun evidence was unfairly prejudicial, and that the district judge's comment that "[the gun evidence] is tremendously prejudicial" shows she did not know she had the discretion to exclude evidence of the gun. (Tr. at 1421.) We think it much more likely that the district court judge understood the rules of evidence and admitted the gun evidence because, although it was unques-tionably prejudicial, it was not so unfairly prejudicial as to substantially outweigh its probative value. Admitting evidence of the gun was not an abuse of discretion.

### 3. dog alert

In its rebuttal, the government offered evidence that Banks's Jeep was inspected by a narcotics-trained dog and that the dog alerted to the driver's seat of the vehicle. The district court conducted a hearing and voir dire of the dog's handler, and initially allowed the evidence to be presented to the jury. After the dog handler's testimony, though, and after court had been adjourned for a weekend, the district court decided to strike the evidence. Banks claims that the district court's error of allowing the evidence to be pre-sented prejudiced him, and that the subsequent jury in-structions to disregard the dog handler's testimony were insufficient.

Banks offers nothing to show how the weekend lapse between the introduction of the dog alert evidence and the

instructions to disregard that evidence was prejudicial to him. We find it implausible that the jury considered this testimony in convicting Banks of possessing the cocaine found in April's apartment. On the contrary, it appears that the jury was able to put the testimony out of their minds, since they acquitted Banks of the charge of selling cocaine to Jackson the night of the dog inspection. *See Smith*, 308 F.3d at 739-740.

### F. Sentencing

The Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), significantly changed sentencing in federal courts. The Court held that, in order to comply with the Sixth Amendment, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. As a remedy, the Court severed the statutory provisions making the Guidelines mandatory and gave district courts the discretion to sentence outside the Guideline range so long as the sentence is "reasonable." *Id.* at 764, 765-66.

Banks was sentenced to 97 months of imprisonment. The sentence he would have received based purely on the jury's conviction would have been 70-87 months. The district court's sentencing findings of the presence of a firearm and obstruction of justice, made by the preponderance of the evidence standard, led to enhancements that mandated the higher sentence. Thus, under *Booker*, the sentence was imposed in violation of the Sixth Amendment.

Banks did not argue that the Guidelines were unconstitutional in the district court, so we review his sentence for plain error. *Id.* at 769. Under this standard, we may exercise our discretion to correct error if it is plain, it affects

substantial rights, and it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997). The last prong of this test is "usually equated to causing a 'miscarriage of justice.'" *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) (citing *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)). We stated in *Paladino* that a miscarriage of justice occurs if a sentencing judge, in having thought herself bound by the Guidelines, imposes a longer sentence than she would have if she had thought herself able to exercise discretion. *See id.* at 483. If, however, the sentencing judge would have imposed the same sentence regardless of whether or not the Guidelines were mandatory, the defendant would not suffer prejudice by being sentenced under the mandatory Guideline regime and his sentence would be affirmed provided that it is reasonable. *Id.* at 484.

We therefore retain jurisdiction over this case and order a limited remand to the district court to determine whether the sentencing judge, were she required to resentence, would reimpose the same 97-month sentence that Banks originally received. *See id.* Only if she would not will we vacate Banks's sentence and remand for resentencing in accord with *Booker*. *See id.*

## III.  Conclusion

Based on the reasoning above, we AFFIRM Banks's conviction as to count two. We REMAND to the district court for the limited purpose of determining whether vacatur of Banks's original sentence is necessary so that he may be resentenced in accordance with *Booker*.

No. 03-3176                                                      23

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*