**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2005[*]
Decided July 19, 2005

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3109

| | |
|---|---|
| FELIPE RANGEL, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Northern District |
| | of Indiana, South Bend Division. |
| *v.* | |
| | No. 3:04 CV 0138 AS |
| UNITED STATES OF AMERICA, | |
| *Respondent-Appellee*. | Allen Sharp, *Judge*. |

**O R D E R**

Felipe Rangel and his cousin, Jose Garcia, were indicted on six counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Garcia pleaded guilty and agreed to cooperate with the government. At Rangel's trial, Garcia testified that Rangel provided the cocaine that Garcia had delivered to undercover agents on the six occasions alleged in the indictment. The jury returned a finding of guilt on two of the six counts, which happened to be the only two deals during which Rangel was actually present. The court then sentenced him to 63 months' imprisonment on each count, to run concurrently. Despite Rangel's acquittal on the four remaining counts, the court

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

included the drug quantities associated with them as relevant conduct in the calculation of his guideline range. As a result, his total sentence was the same as if he had been convicted as charged. See U.S.S.G. § 1B1.3. Rangel appealed, and we affirmed in all respects. See *United States v. Rangel,* 350 F.3d 648 (7th Cir. 2003).

Rangel returned to the district court with a motion for collateral relief under 28 U.S.C. § 2255. The district court denied the motion in an order that principally discussed the effectiveness of defense counsel in the sentencing process. The court then granted a certificate of appealability in which it identified five issues: (1) whether the sentencing court violated Fed. R. Crim. P. 32(i) by neglecting to ask Rangel whether he had read the presentence report (PSR), (2) whether this alleged violation of the rules violated Rangel's due process rights, insofar as it prevented him from objecting to the guidelines computations in the PSR, (3) whether appellate counsel was ineffective for failing to argue that Rule 32(i) was violated, (4) whether trial counsel rendered ineffective assistance by failing to object during closing argument to the prosecutor's statements that Garcia was a truthful witness and that Rangel "smoked cocaine," and (5) whether appellate counsel rendered ineffective assistance by failing to argue on appeal that the prosecutor altered certain stipulated trial exhibits and then tried to slip them to the jury.

Before discussing any of these points, there is a preliminary issue that we must highlight, namely, the standard for granting certificates of appealability. The governing statute states that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Before the statute was amended in 1996, the vehicle for an appeal was a certificate of probable cause, which issued upon a "substantial showing of the denial of a *federal* right." See *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983) (emphasis added). There is a significant difference between the denial of a federal right, which might be a statutory right, and the denial of a constitutional right. Had the district court applied the correct standard, it would not have certified the first of the five issues, which concerns only a violation of the criminal rules. We therefore vacate the certificate of appealability insofar as it includes only the rule violation, and move on to the remaining four points, which do raise constitutional issues.

The second and third issues recast the alleged violation of Rule 32(i) as a due process claim and an ineffectiveness of trial counsel claim, but the arguments look no better as rearranged. Rangel argues that the sentencing court's failure to ask him directly whether he had read the PSR, had discussed it with his lawyer, and wished to challenge it, prevented him from asking for a "minimal or minor participant" reduction and a "safety valve" reduction under the Sentencing Guidelines. See U.S.S.G. §§ 3B1.2, 5C1.2, 2D1.1(b)(7). In fact, however, trial counsel asked the court

for the mitigating role adjustment, and it was clear that Rangel was not entitled to the safety valve because he did not reveal his sources to the government. Under the circumstances, it is plain that his due process rights were not violated. It is equally clear that he was not prejudiced by anything his counsel did or did not do, especially in light of the undisputed fact that counsel reviewed the contents of the PSR with Rangel by telephone before the sentencing.

Rangel next argues that his trial counsel rendered ineffective assistance when he failed to object to certain parts of the prosecutor's closing argument. The prosecutor acknowledged that drug dealers are not model citizens, but he went on to say:

> But that does not mean that when Tony Garcia stood up there and said my source of supply was the defendant, my cousin, Felipe Rangel, that he was not telling the truth.
>
> In fact, ladies and gentlemen, he was telling you the truth. He was his source of supply in all of these deals, just like he said he was.
>
> Well, how do you know that Tony Garcia was telling the truth?
>
> Well, we had introduced evidence on the transcripts showing Tony Garcia refers time and again in those transcripts to his cousin.

The prosecutor then suggested that Garcia went from being a person Rangel "hung out" with to someone who was essentially an employee. After these statements, Rangel's attorney argued repeatedly to the jury that Garcia was a liar and had testified falsely because of his deal with the government. In its final charge, the district court instructed the jury that "closing arguments and other statements of counsel should be disregarded to the extent that they are not supported by the evidence," that it was up to the jury to decide "whether the testimony of each witness is truthful and accurate," and that the jurors should consider "with caution and great care" the testimony of a witness who receives benefits from the government.

Taken in context, one could conclude that the prosecutor was commenting on the evidence, not expressing his personal belief in Garcia's credibility. See *United States v. Clark,* 227 F.3d 874, 884-86 (7th Cir. 2000). Counsel's decision not to object may well have been a reasonable strategic choice at that moment in the trial. Even if it was not, however, there is no way that the prosecutor's remarks could have deprived Rangel of a fair trial and thus prejudiced him. The defense rebutted the prosecutor's comments about Garcia, and the court gave appropriate instructions, which we presume the jury followed. See *United States v. Puckett,* 405 F.3d 589, 599 (7th Cir. 2005); *United*

*States v. Sandoval,* 347 F.3d 627, 631 (7th Cir. 2003).

Rangel also contends that his appellate counsel provided ineffective assistance by failing to argue that the prosecutor engaged in misconduct by distributing to the jurors copies of transcripts of telephone conversations that had been altered after a stipulation with defense counsel. The stipulated copies indicated that various dates were "unknown," while the copies initially distributed to the jury had the dates filled in. Although this could have caused problems had it gone undetected, in fact trial counsel objected immediately, the transcripts with dates were collected right away, and the jurors never had a chance to review them. Outside the presence of the jury, the prosecutor tried to justify the alterations, but the court threatened a mistrial unless he used the exact form of the transcript to which the defense had stipulated. He did as ordered, and that was the end of the story. It was well within the range of reasonable appellate representation to conclude that there was no issue worthy of appeal in this sequence of events. See *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003).

Finally, Rangel argues that his sentence is inconsistent with *United States v. Booker,* 125 S.Ct. 738 (2005). Not only is this issue beyond the scope of the certificate of appealability, but it is foreclosed by our decision in *McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir. 2005), which held that *Booker* does not apply retroactively to criminal cases like Rangel's that became final before *Booker* was handed down (January 12, 2005).

We AFFIRM the judgment of the district court.