**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 6, 2005
Decided April 19, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 04-4130

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        *Plaintiff-Appellee,*<br><br>        *v.*<br><br>YEMI ODULATE,<br>        *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 03 CR 808<br><br>Matthew F. Kennelly,<br>*Judge.* |

**O R D E R**

Yemi Odulate, a native of Nigeria, was convicted after a jury trial of one count of conspiracy to possess with intent to distribute heroin, 21 U.S.C. §§ 846, 841(a)(1), six counts of possession with the intent to distribute heroin, 21 U.S.C. § 841(a)(1), and two counts of using a telephone to commit a narcotics offense, 21 U.S.C. § 843(b). Odulate appeals his conviction and argues that there was insufficient evidence at trial to sustain the jury's finding that he was part of the single conspiracy alleged in the indictment, that the district court erred in denying his motions for a new trial, and that the government withheld exculpatory evidence. We affirm.

## I.  Background

The investigation into the criminal conspiracy at issue here began when a confidential informant notified DEA agents that he could buy heroin from a man named Al Stevens.  The DEA began using the informant to conduct controlled buys of heroin from Stevens and obtained a court-authorized Title III wiretap on Stevens' telephone.  The controlled buys and telephone surveillance revealed that Odulate was helping Stevens fill the informant's orders through his direct and indirect connections to Theodore Fabriek, Olajide Omosanya, and Akin Martins.  Odulate was present for at least one controlled buy, on August 27, 2002.

The DEA next obtained a wiretap on Odulate's telephone and recorded a series of conversations which expanded the scope of the investigation.  One in particular on or about November 27, 2002, delineated Odulate's role in the conspiracy.  At the DEA's request, the confidential informant placed an order for 100 grams of heroin through Stevens, who in turn called Odulate.  Stevens told Odulate, "It's a whole hundred."  One minute after hanging up with Stevens, Odulate called his codefendant Martins and left a message, in the Nigerian language Yoruba, instructing him to return his call immediately.  Shortly after leaving that message, Odulate called another unindicted associate and discussed, also in Yoruba, how quickly that associate could obtain "a hundred."  The subject of the transaction was not specifically referred to as heroin or any other substance, but merely as a quantity.  Odulate then called Stevens and they discussed what they referred to as the "common denominator" during their conversation, settling on "8750."  Odulate then reached Martins on the phone, and they discussed whether they could get "a whole one."  "The cost has to go down," Odulate said, "because we are not going to make any profit on it at all."  A series of calls between Odulate and Stevens and between Odulate and Martins followed, but the deal, which the DEA had never intended to carry out, fell through.  The next day, November 28, Odulate called Martins and instructed him on how to retrieve an unspecified "it" from a gym shoe in "that house."  The investigation continued until Odulate was arrested several months later and indicted on nine separate counts.  Martins, Omosanya, Fabriek, and Stevens were also arrested and charged in the same conspiracy counts.[1]

---

[1]  Count One of the indictment alleged that couriers under Fabriek's direction ingested heroin in Africa and flew to Chicago, where Fabriek recovered the heroin and stored it until Omosanya divided it among other coconspirators, including Martins, for distribution.  Martins in turn arranged for his share of the heroin to be

(continued...)

Only Martins and Odulate went to trial; the other indicted co-conspirators pleaded guilty and testified against the two men. At trial neither Fabriek nor Omosanya admitted to knowing Odulate personally or being familiar with his particular transactions, but they did testify as to their links to Martins. Stevens testified as to his role in the five controlled buys underlying Counts Two through Six and to his communications with Odulate about planned transactions. He testified, for example, that he and Odulate tried to cultivate the informant as a repeat customer by selling him, in the very first deal, sixteen grams of high-quality heroin rather than twenty-five lower quality grams that he requested. He also offered testimony concerning the defendants' protocol for arranging heroin transactions, which included using code words in conversations with each other to obscure the subject of their arrangements. He indicated, for example, that the conspirators referred to grams of heroin as "ladies."

The jury found both Odulate and Martins guilty on all counts. Before sentencing, Odulate moved for a new trial under Federal Rule of Criminal Procedure 33. Odulate presented multiple arguments, including that the he should have been tried separately from Martins because there were multiple conspiracies at issue and because had they been tried separately Martins would have testified on his behalf that their recorded conversations had been about marijuana rather than heroin. The district court denied this motion, noting that Odulate had not shown that if the trial been severed that Martins would have chosen to testify on his behalf. Odulate then renewed his Rule 33 motion, adding an affidavit from Martins attesting that he never discussed or trafficked heroin with Odulate, and that he would testify accordingly. The renewed post-trial motion also added an argument that there was insufficient evidence to convict him on *any* of the counts in the indictment, including the substantive counts. After conducting a hearing, the district court denied the motion. Odulate renewed again, and this time added an assertion that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not revealing that DEA agents questioned Taofiki Lasisi, one of Odulate's

---

[1](...continued)

sold by Odulate and Stevens. Counts Two through Six alleged that Odulate and Stevens possessed heroin with the intent to distribute it on the dates of the controlled transactions with the informant. Count Seven alleged that Martins and Odulate possessed heroin with the intent to distribute on November 27, 2002, when Martins and Odulate tried to fill the order for 100 grams placed by the informant through Stevens. Counts Eight and Nine accused Odulate and Stevens and Martins and Odulate, respectively, of using a telephone in furtherance of the underlying narcotics offenses.

associates, during their investigation. Odulate offered an affidavit from Lasisi explaining that he was questioned by the DEA in relation to a surveillance photograph showing Lasisi handing a shoulder bag to Odulate, and told by the interviewing agent that the bag had been recovered, that it belonged to Odulate, and that it contained heroin. Odulate also submitted an affidavit from Lanre Ogunnubi, a mutual associate, supporting Lasisi's statement. Odulate contended that this revelation was exculpatory because the government would have offered the photograph, heroin, or Lasisi's testimony at trial if the government's investigation of Lasisi implicated Odulate. The prosecution denied that the DEA was ever in possession of such a photograph or any bags or heroin not admitted at trial. The district court, concluding that the agents had perhaps mislead Lasisi, but also that the prosecution had not withheld any exculpatory evidence, denied Odulate's motion.

Odulate was sentenced to 72 months' incarceration, near the low end of the guideline range of 70 to 87 months. The district court stated that it would have given Odulate the same sentence under either a mandatory or discretionary guideline regime.

## II. Discussion

Odulate argues that the government failed to prove that he was part of the single conspiracy for which he was indicted, and at most proved the existence of multiple, smaller conspiracies. He contends that this variance makes the evidence introduced at trial, including the testimony of coconspirators who did not know him, insufficient to support his conviction. We treat an assertion of variance as a claim that there was insufficient evidence to support the jury's finding that the defendant was a member of the charged conspiracy. *United States v. Polichemi*, 219 F.3d 698, 706 (7th Cir. 2000). Showing the existence of multiple conspiracies is not enough to warrant a reversal; Odulate must show that no reasonable juror could have found that he was part of the charged conspiracy. *United States v. Messino*, 382 F.3d 704, 709 (7th Cir. 2004). We evaluate the evidence in the trial record in the light most favorable to the government. *United States v. Julian*, 427 F.3d 471, 475 (7th Cir. 2005).

The evidence presented at trial demonstrates that a reasonable juror could have found that Odulate was part of a single conspiracy with the shared goal of distributing heroin. When the informant approached Stevens to purchase heroin, Stevens contacted Odulate, who in turn notified Martins and others about the proposed sale. Stevens testified that he and Odulate discussed how to maximize and divide their profits from selling heroin, and how to entice the informant into becoming a regular customer by selling him the highest quality heroin possible as part of the first transaction. Fabriek described the mechanics of the supply side of

the conspiracy, including the importation of heroin from Nigeria. He testified that Omosanya gave Martins some of the imported narcotics. It is obvious from testimony at trial and the wiretaps that the relationship between the conspirators was not merely that of buyers and sellers, but that of cooperating coconspirators. For instance, Fabriek testified that in exchange for regular duties, Omosanya paid off his living expenses rather than paying him per heroin shipment. This is precisely the sort of standardized dealing and prolonged cooperation that we have found to be indicative of a conspiratorial, rather than buy-seller relationship. *See United States v. Suggs*, 374 F.3d 508, 518 (7th Cir. 2004). Fabriek also testified that he never saw Martins pay for the heroin he received, which is known as "fronting" and is another characteristic that establishes more than a buyer-seller relationship between Fabriek, Omosanya, and Martins. Indeed, it evinces the mutual trust and prolonged cooperation inherent in a conspiratorial relationship. *Id*. The connection between Martins and Odulate was confirmed by the wiretaps that showed Odulate's reliance on Martins for delivering the quantities of heroin he expected to sell to the confidential informant through Stevens. This demonstrates a common, cooperative goal of heroin distribution, and that the parties "could not have conducted business nearly as well without such cooperation." *United States v. Messino*, 382 F.3d 704, 710 (7th Cir. 2004).

Odulate next argues that the district court should have granted his Rule 33 motion for a new trial. Rule 33 allows a district court to grant a new trial "if the interest of justice so requires." We have ruled that to fulfill the requirements for a new trial on the basis of newly discovered evidence, the defendant has the burden of demonstrating that the evidence "(1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). Odulate asserts that Martins' affidavit, in which he denies that he ever discussed or trafficked heroin with Odulate and affirming his willingness to testify to that effect, satisfies the requirements.

This contention is frivolous. In his affidavit Martins talks about his dealings with Odulate, so his information—if true—must have been known to Odulate all along, and therefore does not constitute evidence which was discovered only "after trial." *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005). Moreover, Odulate falls far short of establishing that calling Martins, his codefendant, would have led to an acquittal. Even ignoring the testimony of the other co-conspirators, Odulate's recorded telephone conversations with Martins are enough to establish that Martins is being anything but truthful in his affidavit.

Finally, Odulate contends that the government committed a *Brady* violation when it failed to disclose that the DEA interviewed Lasisi and Ogunnubi. Lasisi's

affidavit simply stated that he was interviewed by the DEA and that he was told that the agency had a photograph of him and Odulate with a bag, that the bag had been recovered for fingerprinting, and that it contained heroin. Odulate asserts that the district court based its denial of his Rule 33 motion on the assumption that the bag in question was one of the plastic bags introduced at trial, but that the bag described to Lasisi was a shoulder bag or backpack. But even assuming that this characterization is correct, under *Brady* Odulate is required to demonstrate why the evidence in question is exculpatory, that it was suppressed by the government, and that the suppression prejudiced his defense. *United States v. Banks*, 405 F.3d 559, 563-64 (7th Cir. 2005). Odulate failed to demonstrate any of these elements. In particular, he does not explain how the fact that Lasisi was interviewed or the bag he was told the DEA possessed could be exculpatory. In fact, if the bag did exist and did contain heroin, it might be inculpatory evidence. Nor has Odulate attempted to explain how, if evidence was suppressed, his defense was prejudiced; he has failed to demonstrate that the trial would probably have had a different outcome had the evidence he describes been disclosed. *See United States v. Irorere*, 228 F.3d 816, 829 (7th Cir. 2000).

AFFIRMED.